[No. D006621. Fourth Dist., Div. One. July 20, 1989.]

BEATRICE JEAN HOOPER, Plaintiff and Appellant, v.
CITY OF CHULA VISTA, Defendant and Appellant.

**COUNSEL**

Stennett & Stennett, John P. Stennett and Ronald E. Ellsworth for Plaintiff and Appellant.

Daley & Heft, Dennis W. Daley and Patricia A. Shaffer for Defendant and Appellant.

## OPINION

**HUFFMAN, J.**—This appeal presents a question of first impression as to the extent of statutory immunity from negligence liability to be accorded to the public employer of police officers whose pursuit of a fleeing suspect resulted in injury or death of the suspect. Seventeen-year-old Thomas Hooper (Thomas) was killed while being chased by several City of Chula Vista (City) police cars when he lost control of his motorcycle and slid under one of the pursuing vehicles. His mother, Beatrice Jean Hooper, sued the City for damages for wrongful death and negligent infliction of emotional distress. A jury returned a verdict in her favor on the wrongful death theory, fixing her damages at $855,751.19 and, in allocating comparative negligence, found Thomas 85 percent negligent and the City 15 percent negligent. The jury also rendered a special verdict denying Hooper any recovery on her *Dillon* v. *Legg*[1] theory of negligent infliction of emotional distress. After motions for new trial were filed by both parties, the trial court conditionally granted a new trial to the City unless Hooper accepted a remission of the damages to $500,000, which she did.

The City now appeals the judgment entered on the wrongful death verdict and the order denying its motion for judgment notwithstanding the verdict. (Code Civ. Proc., § 904.1, subds. (a), (d).) The City contends it is immune from liability as a matter of law and public policy for any negligence in continuing to pursue Thomas. The City also contends the trial court prejudicially erred when it refused to instruct the jury that the sole basis for any negligence liability was Hooper's theory a police vehicle rear-ended Thomas's motorcycle.

On cross-appeal, Hooper argues the judgment entered on the jury verdict denying her any recovery for negligent infliction of emotional distress is not supported by substantial evidence, and claims instructional error was committed on that issue. She further contends the trial court's order conditionally granting the City's motion for new trial was inadequately supported by the specification of reasons given.

■ We conclude the judgment on the wrongful death cause of action must be reversed because the trial court erred as a matter of law in allowing any negligence theory to go to the jury in light of statutory immunity derived from Thomas's status as a suspect attempting to elude police pursuit when he was killed. We further find the City's motion for judgment notwithstanding the verdict should have been granted, and our reversal is with directions to the trial court to enter judgment accordingly. We affirm

---

[1] *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].

the judgment on the verdict denying any recovery on Hooper's negligent-infliction-of-emotional-distress theory pursuant to our conclusion on the immunity issue and consistent with the authority of the recent Supreme Court case of *Thing* v. *La Chusa* (1989) 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814].

## FACTUAL AND PROCEDURAL BACKGROUND

Thomas was an experienced motorcycle rider who had owned a red Enduro motorcycle or "dirt bike" for a few weeks before his death. He was in the habit of carrying a knife on his belt to use for odd jobs.

On the evening of November 13, 1981, when Thomas was 17, he attended a friend's birthday party and had a few beers. He then left to go to Skateland to look for a girl he knew. A security officer at Skateland complained to City Police Officer George Hart that a person riding a red motorcycle was speeding in the lot and displaying a knife. The rider left when the security guard tried to contact him.

Officer Hart and the reserve police officer working with him, Officer Cheryl Vallejo, followed the rider in their police car as he turned around and looked at them. Officer Hart could see the rider was a young blond white male who was not wearing a helmet and whose motorcycle had no license plate. Hart did not recognize the rider, although he had had two earlier contacts with Thomas, once when he cited Thomas for riding on private property and once when Thomas kicked him while being transported to the police station on another matter. Hart brought assault and battery charges against Thomas based on that incident. At trial, Hart testified he intended to stop the rider because of the information the security guard had given him, because the rider had been speeding through the occupied parking lot, because the motorcycle had no license plate, and because there were reports of robberies where a knife was used by a blond male.

After looking at the police officers, the rider took off from the parking lot, made a U-turn and then swerved around the patrol car and left the scene. Hart activated his emergency lights and then his siren and followed. During the chase, which Vallejo estimated lasted for about two minutes, the rider ran seven red lights and had three near collisions at separate intersections. The police car tended to lose ground at corners and intersections and made up speed on the straightaways. Both the rider and the police car reached maximum speeds of 65-75 miles per hour. Until the very end of the chase, the rider maintained control of his motorcycle.

Two other police vehicles, each with emergency lights activated, joined the chase. Officer Villapando tried to block one area, but the rider came at

him and then swerved around the car. Officer King tried to block a different area by stopping in the lane of traffic. King could see Officer Hart's car pursuing the rider, but could not tell how far apart the two vehicles were. King did not see any police unit strike the motorcycle from behind.

Thomas's friend Evan Pipitone was looking for him that evening. He headed toward the Hooper home on his motorcycle and found the chase in progress nearby. The police car was 25 to 30 feet behind the motorcycle, which Pipitone did not recognize as Thomas's. Pipitone followed the police car out of curiosity. He saw the police car gaining ground on the motorcycle at around 45 to 50 miles per hour. He could see the cycle's taillight through the car windows. The police car then accelerated, the taillight disappeared, and the motorcycle "kicked out" or fell over at the side of the police car. Although Pipitone could not see any contact between the car and the cycle and could not tell how far apart they were, he saw sparks and then saw the cycle spinning on the ground. Cycle and rider slid under Officer King's police car, which came to a stop upon impact.

Both Officer Hart and Officer Vallejo denied their vehicle came into contact with the motorcycle. Hart saw sparks just before the driver slid under the other police car.

Thomas's blood-plasma-alcohol content as measured at Bay General Hospital was .225, which translates to .193 on the whole blood-alcohol scale (plus or minus 5 percent). He died at Balboa Hospital five days later without ever fully regaining consciousness.

The morning after the accident, Thomas's brother and a friend went to the scene. They found a piece of red plastic in a gutter at an intersection close to the accident site. The piece of plastic appeared to match a portion missing from the motorcycle taillight. Both the plastic and the rear of the motorcycle had black markings on them after the collision, although the taillight and fender had been purchased two days before and did not then have marks on them. Two experts who testified for Hooper at trial opined these marks showed the Hart police car had rear-ended the motorcycle.[2] In contrast, the City's theory was that the motorcycle sustained rear damage when it slid into the stopped police car.

After filing her claim with the City and having it rejected, Hooper filed her complaint for wrongful death and negligent infliction of emotional distress. She alleged the police vehicles were negligently operated so as to

---

[2] One of these experts also concluded that Thomas would not have been able to operate his motorcycle as he did if his blood-alcohol level were as high as the Bay General reading showed it was.

cause Thomas to lose control of his motorcycle and slide under a police car, the impact killing him, and that she heard and saw the accident occur and became immediately aware her son was the victim.

The City answered, raising a number of affirmative defenses. It asserted it was entitled to immunity from civil liability because its employees acted within the scope of their discretionary duties and official functions.

Jury trial began on March 30, 1987. Hooper presented two alternate theories to the jury: that the police officers were negligent in continuing the pursuit past some certain point due to the danger of injury to Thomas or others, and that Officer Hart's vehicle rammed the motorcycle, causing Thomas to lose control. At *in limine* discussions at the beginning of trial, possible instructions on these negligence theories were discussed. The trial court stated it would instruct on the ordinary law of negligence as it did not believe any different rules applied when the plaintiff's decedent was a suspect attempting to elude police pursuit.

After the evidence was concluded, the City requested an instruction which would have eliminated Hooper's theory the City was negligent in continuing the pursuit and restricted the jury to determining whether the Hart vehicle rear-ended the motorcycle. The court refused that instruction, but gave standard BAJI instructions on the definition of negligence, including Nos. 3.00, 3.10, and 3.11.[3]

The jury was also instructed on comparative negligence in the language of BAJI Nos. 3.45, 3.53, and 14.91 with regard to Hooper's violation of Vehicle Code section 2800.1 in attempting to elude police pursuit. With respect to the applicable duty of care, BAJI No. 5.80, "Authorized Emergency Vehicle Exemption," was given as modified as follows: "It is the duty of the driver of a police vehicle to exercise that amount of care which, under all the circumstances, would not impose upon others an unreasonable risk of harm. That standard of conduct which is reasonable under all the circumstances must, of course, take into consideration the unusual circumstances confronting the driver of a police vehicle—that is, the emergency which necessitates immediate action and the duty imposed upon the driver to take reasonable and necessary measures to alleviate the emergency. The question to be asked is, 'what would a reasonable, prudent driver of a police vehicle do under all of the circumstances, including that of the emergency?'"

---

[3] All BAJI instructions cited in this opinion are from the Seventh edition, 1986. BAJI No. 3.00 instructed "When Plaintiff Entitled to Recover"; No. 3.10 covered "Negligence and Ordinary Care—Definitions"; and No. 3.11 provided "A Test for Determining the Question of Negligence."

By agreement of counsel, the jury was also instructed, "The City of Chula Vista is immune from liability for the decision to initiate the pursuit of Thomas Hooper."

The trial court refused Hooper's request to give a modified version of BAJI No. 12.83, the *Dillon* v. *Legg*[4] instruction. Instead, standard versions of BAJI Nos. 12.83 and 12.84 on negligent infliction of emotional distress were given.

On the cause of action for negligent infliction of emotional distress, the jury was presented with special verdict No. 2, which asked: "Do you find that plaintiff saw the Hart vehicle approaching the intersection of Second and "K" Street prior to the accident?" This it answered in the negative, thus denying Hooper any recovery for infliction of emotional distress.

On special verdict No. 1, the wrongful death theory, the jury returned a verdict in favor of Hooper for $855,751.19, finding the City negligent. Thomas was found to be 85 percent responsible, thus reducing the award to $128,362.67. Judgment was entered on the verdict.

Hooper moved for new trial on the grounds of insufficiency of the evidence to justify the jury's finding on her emotional distress cause of action, and error of law on the same cause of action. The City also sought new trial alleging excessive damages, jury misconduct, and other grounds, and moved for judgment notwithstanding the verdict on the ground the City was immune from liability as a matter of law under Government Code section 845.8[5] for continuing to pursue Thomas.

The court denied all of these postjudgment motions except for the City's new trial motion which it conditionally granted on the ground of excessive damages only. Damages were reduced to $500,000, and Hooper accepted the remittitur.

The City appeals the judgment and the order denying its motion for judgment notwithstanding the verdict. Hooper cross-appeals the judgment

---

[4] *Dillon* v. *Legg, supra,* 68 Cal.2d 728.

[5] All statutory references are to the Government Code unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

Section 845.8 provides in pertinent part as follows: "Neither a public entity nor a public employee is liable for:

". . . . . . . . . . . . . . . . . . .

"(b) Any injury caused by:

"(1) An escaping or escaped prisoner;

"(2) An escaping or escaped arrested person; or

"(3) A person resisting arrest."

on her emotional distress theory and the conditional order granting new trial.

## DISCUSSION

Review of this judgment raises difficult questions of duty and immunity stemming from the interaction between the provisions of section 845.8(b) and Vehicle Code section 17001.[6] Our resolution of these questions is based on a reading of the controlling case, *Kisbey* v. *State of California* (1984) 36 Cal.3d 415 [204 Cal.Rptr. 428, 682 P.2d 1093], which differs from the interpretations accorded that decision by other Courts of Appeal.[7] We further find those Court of Appeal decisions to be distinguishable on their facts. Accordingly, we are required to discuss a question of first impression, the public policy issues surrounding negligence liability of a public entity to the heir of a fleeing suspect.

A significant body of case law has sought to reconcile the provisions of section 845.8, granting immunity to a public entity and its employees for injuries caused by persons escaping arrest or detention, with the provisions of Vehicle Code section 17001, imposing liability upon a public entity for injury caused by an employee's negligent operation of a motor vehicle. Other cases in this area have sought to reconcile similar Government Code sections granting specific immunities, such as sections 815.2 and 820.2, with Vehicle Code section 17001. The unfortunate fact pattern in which these statutory conflicts have arisen, suspects fleeing in their vehicles from police pursuit, wreaking death and destruction upon innocent third parties in their path, has happened again and again. (See, e.g., *Kisbey* v. *State of California, supra,* 36 Cal.3d 415; *Reenders* v. *City of Ontario* (1977) 68 Cal.App.3d 1045 [137 Cal.Rptr. 736]; *Gibson* v. *City of Pasadena* (1978) 83 Cal.App.3d 651 [148 Cal.Rptr. 68]; *Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648 [161 Cal.Rptr. 140]; *City of Sacramento* v. *Superior Court* (1982) 131 Cal.App.3d 395 [182 Cal.Rptr. 443]; *City of San Jose* v. *Superior Court, supra,* 166 Cal.App.3d 695; *Stark* v. *City of Los Angeles, supra,* 168 Cal.App.3d 276.)[8]

---

[6] Vehicle Code section 17001 provides: "A public entity is liable for death or injury to person or property proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment."

[7] See, e.g., *City of San Jose* v. *Superior Court* (1985) 166 Cal.App.3d 695 [212 Cal.Rptr. 661]; *Stark* v. *City of Los Angeles* (1985) 168 Cal.App.3d 276 [214 Cal.Rptr. 216].

[8] The parties do not cite, and our research has not uncovered, California cases in which it is the suspect who sought to escape who was injured, and who later sued his pursuers. However, the City cites out-of-state authority, *Almeida* v. *Town of North Providence* (R.I. 1983) 468 A.2d 915, and *Bailey* v. *L. W. Edison Charitable Foundation* (1972) 152 Ind.App. 460 [284 N.E.2d 141], in which appellate courts upheld denials of recovery from public entities to

■ In discussing statutory liabilities for police and correctional activities, Professor Van Alstyne states the general rule which has emerged from the Government Code and related provisions: "Public entities may be held liable, in the absence of a specific statutory immunity, for negligence in the course of executing and enforcing the law." (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 4.3, p. 328, italics deleted.) Vehicular negligence is one such potential area of liability, and the specific statutory immunity provided by section 845.8 has not generally been found to be all-inclusive.

Instead, the prevailing interpretation of section 845.8 has been that Vehicle Code section 17001 carves out a limited exception to the general rule of immunity for injuries caused by fleeing suspects, when police pursuit was in some way conducted negligently. For example, in *City of San Jose* v. *Superior Court, supra,* 166 Cal.App.3d at page 699, the Court of Appeal reiterated its holding in *Duarte* v. *City of San Jose, supra,* 100 Cal.App.3d 648: "We then acknowledged the apparent conflict between the seemingly absolute grant of immunity provided to public entities and their employees by section 845.8 of the Tort Claims Act and the equally unconditional public entity liability imposed by Vehicle Code section 17001. We pointed out that the purpose of Vehicle Code section 17001, which is to hold a public entity financially accountable for its employees' torts committed with a motor vehicle during the scope of their employment, would be thwarted by the application of the Tort Claims Act immunity. [Citation.] In addition, we concluded that holding the city responsible for injuries caused by the negligent operation of its police vehicles would not offend any public policy underlying the immunity provided by Government Code section 845.8. We therefore concluded that section 845.8 did not shield the city from liability under the facts of the case, even though an escaping arrested person was involved. [Citation.]" (*City of San Jose* v. *Superior Court, supra,* 166 Cal.App.3d at p. 699.)

We begin our analysis of the facts in this case with the general language of the Supreme Court in *Kisbey* v. *State of California, supra,* 36 Cal.3d at page 419, interpreting section 845.8. The court first noted that section provides for an absolute immunity, applying to both discretionary and ministerial acts, and commented: "It seems clear that the purpose of the

passengers who were injured in speeding vehicles that were pursued by police and eventually crashed. Other cases in which recovery from public entities to passengers injured in police chases of their vehicles was denied are *United States* v. *Hutchins* (6th Cir. 1959) 268 F.2d 69 and *Blanchard* v. *Town of Kearny* (1976) 145 N.J.Super. 246 [367 A.2d 464] (affd. 153 N.J.Super. 158 [379 A.2d 288]; disapproved in part insofar as the question of police negligence was not addressed in *Smith* v. *Nieves* (1984) 197 N.J.Super. 609 [485 A.2d 1066]). (See Annot., Liability of Governmental Unit or Its Officer for Injury or Damage from Operation of Vehicle Pursued by Police (1962) 83 A.L.R.2d 452.)

broadening amendment to subdivision (b) was to immunize public entities and employees from the entire spectrum of potential injuries caused by persons actually or about to be deprived of their freedom who take physical measures of one kind or another to avoid the constraint or to escape from it." (*Ibid.*)

The factual context in which *Kisbey* arose involved a police investigative stop of a vehicle. At the moment the officers, who had alighted from their police car to approach the vehicle on foot, attempted to approach its driver, the vehicle sped away and collided with plaintiff. Since at the moment of the escape, the officers were no longer driving, Vehicle Code section 17001 did not come into play.

Later Court of Appeal cases have construed the broad language of *Kisbey* regarding section 845.8 to be limited to its peculiar facts. For example, in *Stark* v. *City of Los Angeles, supra,* 168 Cal.App.3d 276, 287, the court agreed with the analysis found in *City of San Jose* v. *Superior Court, supra,* 166 Cal.App.3d 695. In that case, the court interpreted *Kisbey* as dealing only with the question of how far the arrest or detention of the suspect driver had progressed before escape occurred, in deciding the scope of section 845.8. (*Id.* at p. 701.) Both Courts of Appeal distinguished *Kisbey* as not involving an active vehicular pursuit, and noted it did not discuss two existing Court of Appeal holdings: *Duarte* v. *City of San Jose, supra,* 100 Cal.App.3d 648, and another Vehicle Code section 17001 case where section 845.8 was not before the court, *City of Sacramento* v. *Superior Court, supra,* 131 Cal.App.3d 395. Therefore, *Kisbey*'s holding was said to be narrow and not to impliedly disapprove a *Duarte*-type interpretation of the interplay between section 845.8 and Vehicle Code section 17001. (*City of San Jose* v. *Superior Court, supra,* 166 Cal.App.3d at p. 701.)

Since in this case, it was the pursued suspect himself who was fatally injured, we find the line of cases represented by *Duarte* v. *City of San Jose, supra,* 100 Cal.App.3d 648, to be distinguishable on their facts. Those cases arose in the factual context of injured innocent third parties. Review of this judgment requires a renewed examination of the broad *Kisbey* statement of the scope of section 845.8. (*Kisbey* v. *State of California, supra,* 36 Cal.3d at p. 419.) As in *Kisbey,* therefore, we look to the duty and immunity analysis explained in *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-203 [185 Cal.Rptr. 252, 649 P.2d 894][9] to decide whether this judgment and the

---

[9] The court in *Kisbey* felt free to disregard its own logical approach suggested in *Davidson* v. *City of Westminster* by deciding the question of immunity before the question of duty. However, it would be prudent for this court to follow the prescribed duty/immunity order of analysis.

denial of the City's motion for judgment notwithstanding the verdict must be reversed.

In *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, 201-202, the Supreme Court formulated an approach to immunity issues as follows: "In sorting out the issues presented, it is important to consider first things first. Conceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." (*Ibid.*)

■ Under statutory and case law, it is established a driver of an emergency vehicle owes a general duty of care to drive with due regard for the safety of all persons using the highway, so as not to impose upon others an unreasonable risk of harm. (Veh. Code, §§ 21055, 21056; *Brummett* v. *County of Sacramento* (1978) 21 Cal.3d 880, 886 [148 Cal.Rptr. 361, 582 P.2d 952, 4 A.L.R.4th 858]; *Torres* v. *City of Los Angeles* (1962) 58 Cal.2d 35, 47 [22 Cal.Rptr. 866, 372 P.2d 906].) This duty was the subject of BAJI No. 5.80 given to the jury here, which asked, "[W]hat would a reasonable, prudent driver of a police vehicle do under all of the circumstances, including that of the emergency?" However, to adequately account for "all of the circumstances," such as the emergency itself, the jury would have had to consider the other duties a police officer conducting a pursuit is obligated by virtue of his or her position to perform.

· In *Reenders* v. *City of Ontario, supra,* 68 Cal.App.3d 1045, the Court of Appeal addressed the issue of whether police officers employed by the City of Ontario owed a duty to an injured plaintiff to refrain from pursuing a lawbreaker who was already driving on public streets in a reckless and dangerous manner, in order to protect innocent third parties. The court found no such duty existed. In discussing the factors set out in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], for the determination of whether such a duty as a matter of law exists,[10] the court made the following observations: "No moral blame attaches to City's conduct. Its police officers were attempting to apprehend and remove from the public streets a man who had reportedly been drinking and driving a motorcycle in a reckless and dangerous manner and who was

---

[10] In *Reenders* v. *City of Ontario, supra,* 68 Cal.App.3d at pages 1052-1053, the *Rowland* v. *Christian* policy factors determining whether a duty should be found were reiterated: " '[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' [Citations.]"

suspected of assault with a deadly weapon as well as reckless driving and numerous other violations of the Vehicle Code.

"As to the policy of preventing future harm, who can say whether greater harm would result from the imposition or nonimposition of a duty upon municipalities to refrain from pursuing a lawbreaker already engaged in reckless and dangerous operation of a motor vehicle on the public streets. . . .

"To impose a duty upon municipalities not to pursue a lawbreaker already engaged in dangerous conduct on the city streets would obviously cast a considerable burden on such cities and have serious consequences to the community. One of the prime functions of government is to insure law-abiding, orderly conduct. What is a law enforcement officer to do faced with a situation such as that confronting the police officers in this case? Nothing? The imposition of a duty not to pursue would severely restrict necessary law enforcement conduct without any guaranty that serious injury to members of the public might not ensue anyway.

". . . . . . . . . . . . . . . . . . . . .

"In our assessment, considerations of public policy preponderate against the imposition of a duty upon a municipality and its police officers to refrain from pursuing a lawbreaker who is already operating a vehicle on the public streets and thoroughfares in a reckless and dangerous manner." (*Reenders v. City of Ontario, supra,* 68 Cal.App.3d 1045, 1053-1054.)

Thus, in addition to a police officer's duty to conduct a pursuit reasonably and prudently under all of the circumstances, a police officer has a duty to the community to carry out his or her obligation to promote law-abiding, orderly conduct, including, where necessary, to detain and arrest suspected perpetrators of offenses. Police officers, of course, commonly use motor vehicles as one of many law enforcement tools, and negligence in the operation of such vehicles is not uncommon. The Legislature's enactment in 1959 and amendment in 1965 of the general terms of Vehicle Code section 17001, covering all public vehicles being used within the scope of any public employment, was no doubt a recognition to some degree of this reality.

However, for purposes of interpreting the specific immunity provisions of section 845.8(b), in some ways it is illogical to distinguish between the use of motor vehicles and the use of any other tool by a police officer in the course of making an arrest or attempting to do so. For example, under section 845.8, an officer would be entitled to make a pursuit on foot and use such deadly weapons and force necessary under the circumstances, and in

the absence of a statute imposing negligence liability similar to Vehicle Code section 17001, both the officer and the employing public entity would be immune from liability for any injuries caused by or to the pursued person in the course of resistance to arrest or attempted escape. Thus, if such an attempted arrest resulted in a fistfight in a crowded public area and both the suspect and innocent third parties were hurt, the terms of section 845.8 as interpreted by the Supreme Court in *Kisbey* v. *State of California, supra,* 36 Cal.3d at page 419, would seem to preclude recovery by either the suspect or the third parties. Such a result appears consistent with the legislative intent, as expressed in the Law Revision Commission Comment: "The extent of the freedom that must be accorded to prisoners for rehabilitative purposes *and the nature of the precautions necessary to prevent escape of prisoners* are matters that should be determined by the proper public officials unfettered by any fear that their decisions may result in liability." (Recommendations Relating to Sovereign Immunity, No. 1, Tort Liability of Public Entities and Public Employers (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 861, italics added.)

 ██ We believe there are compelling reasons to apply a broader rule of immunity to claims brought by the subject of the police pursuit, the suspect himself or his heir, than to those made by innocent injured third parties.[11] The policy reasons which some courts (e.g., *Duarte* v. *City of San Jose, supra,* 100 Cal.App.3d at pp. 656-657) have cited to justify a reading of section 845.8 that is limited by the provisions of Vehicle Code section 17001 do not apply with equal force to the suspect who led the chase, as they do to the hapless third party struck down in its wake. A suspect leading a chase has the power to bring it to a halt by submitting to the authority of the officers to detain, question, and/or arrest him, however unpleasant such a submission might be to him. Having created the conditions which led to the danger of injury, a suspect should not be heard to complain of injuries incurred in the chase which he began. Moreover, even though some police negligence might take place during the pursuit, the immunity provided by section 845.8 would nevertheless apply. This follows from the reasoning that immunity questions do not even arise until a duty

---

[11] Despite the City's affirmative defense asserting immunity from liability, the action was tried on the theory the City was exposed to negligence liability if Thomas's motorcycle was rear-ended by a police vehicle, and at oral argument the City conceded such liability exposure existed. However, we do not find the City's position on these issues forecloses this court from finding no such liability would be proper in view of the broad scope of immunity accorded by section 845.8. The City has no power to concede potential liability of other public entities; further, the existence of a defense of sovereign immunity from suit is a jurisdictional question subject to judicial determination, which may be reached on appeal even if not adequately asserted in the trial court. (*County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479, 481 [105 Cal.Rptr. 374, 503 P.2d 1382]; *Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 826 [164 Cal.Rptr. 264].)

of care and potential liability are found to otherwise exist. (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, 201-203.)[12]

In passing, we note the jury here was instructed the City was immune from liability for the decision to initiate the pursuit. Section 845.8 was interpreted by the Supreme Court in *Kisbey* and in *County of Sacramento* v. *Superior Court, supra,* 8 Cal.3d 479, 481-484, to provide absolute immunity for discretionary or ministerial acts. (*Kisbey, supra,* 36 Cal.3d at p. 419.) Therefore, whether the officers' continuation of the chase, once initiated, should properly be considered to be a discretionary or ministerial act is immaterial, since both types of acts by a public employee give rise to immunity under section 845.8. Thus, the jury instruction did not go far enough.

Even if this issue is not dispositive here, it is not without dispute generally. Professor Van Alstyne illustrates the unsettled state of the law in this area by commenting: "For example, the decision by a police officer on patrol duty to pursue a suspect who is trying to escape would seem, in a practical sense, to be a classic case of routine operational decisionmaking; yet such decisions are regularly described as 'discretionary' and thus immune from judicial review in tort litigation. [Citations, including *Reenders* v. *City of Ontario, supra,* 68 Cal.App.3d 1045.]" (Van Alstyne, Cal. Government Tort Liability Practice, *supra,* § 2.65, p. 145.)[13]

Although some authors have reasoned differently about the character of ongoing police activity,[14] in our view it stands to reason that if the initiation of the vehicular pursuit was protected by immunity, its continuation was immune also unless particularized allegations of noncompliance with statutory duties in the manner of conducting the pursuit were made (e.g., failure to sound a siren or use flashing lights, as required by Vehicle Code section 21055; see *Stark* v. *City of Los Angeles, supra,* 168 Cal.App.3d 276 and *City of Sacramento* v. *Superior Court, supra,* 131 Cal.App.3d 395). Here, the evidence showed Officer Hart duly activated his police siren and emergency lights when giving chase; Officers King and Villapando used their emergen-

---

[12] Although both parties relied heavily upon *Brummett* v. *County of Sacramento, supra,* 21 Cal.3d 880, at oral argument and in the briefs, we consider that case to be distinguishable in certain critical respects: the innocent third party was hit by a police vehicle, and the issue of the scope of the immunity granted by section 845.8 was not before the Supreme Court. Hence, while we are bound by its holdings, we cannot find in *Brummett* the necessary authority to dispose of this case.

[13] See also *Watts* v. *County of Sacramento* (1982) 136 Cal.App.3d 232 [186 Cal.Rptr. 154], characterizing later actions of police officers, after initial discretionary decision to intervene in an incident, as also immune as a further exercise of discretion.

[14] See *Kisbey* v. *State of California, supra,* 36 Cal.3d at pages 424-425 (dis. opn. of Bird, C. J.), stating, "Once the officers decided to investigate the reckless driving, their subsequent actions were purely ministerial in character."

cy lights when trying to intercept Thomas. There is no impediment to the application of immunity here.

We find further support for our views in the recently enacted provisions of Vehicle Code section 17004.7. That section, effective January 1, 1988, grants to a public entity immunity from liability for any personal injury or wrongful death damages caused by the collision of a vehicle being operated by an actual or suspected violator of the law while being pursued by police officers, if the agency employing those officers has adopted a written policy on vehicular pursuits which complies with certain enumerated requirements.

Although Vehicle Code section 17004.7 by its terms applies only to acts or omissions taking place on or after January 1, 1988, and thus does not control the case before us, its legislative history is instructive. In a document entitled "Concurrence in Senate Amendments," prepared by the Assembly Office of Research regarding Assembly Bill No. 1912, one of the two bills from which this section originated,[15] the author comments: "Supporters of the Senate amendments argue that the potential of civil liability for accidents caused by fleeing suspects may deter peace officers from pursuits to the detriment of public safety. *Also, in some instances suspects have sought to recover from public entities for injuries incurred during a pursuit.* This bill is intended to encourage public employers of peace officers to adopt express safe pursuit guidelines.

"According to the sponsors, it is hoped that the adoption of guidelines will 'reduce the frequency of accidents' and help remove fear of liability for suspect-caused accidents from the decision of whether to undertake a pursuit. Public agencies which choose not to adopt a policy would be subject to existing statutory and case law regarding the public agency's liability for injuries resulting from suspect pursuits." (Assem. File Analysis of the Assem. Office of Research, Concurrence in Sen. Amendments, Assem. Bill No. 1912 (1987-1988 Reg. Sess.) p. 2, italics added.)

Although this statement is somewhat equivocal, it does indicate the members of the Legislature gave some consideration to suspect-caused accidents and resulting lawsuits by suspects as a problem needing correction and took action to increase the immunity afforded to public entities as a result.

 Based upon all of the above considerations, we hold the trial court erred in delegating to the jury the power to decide whether in the two

---

[15] Both chapters 1201 and 1205, Statutes 1987, enacted the identical language of Vehicle Code section 17004.7.

minutes that this chase lasted a reasonably prudent officer would have given up and let Thomas escape. We decline to extend the principles enunciated in *Duarte* v. *City of San Jose, supra,* 100 Cal.App.3d 648, and similar cases, dealing with innocent injured third parties, to the fact situation here presented: where the heir of the pursued suspect seeks to establish an exception to the immunity granted by section 845.8 solely for alleged negligence during a pursuit.

Here, the City's trial counsel argued in vain to the jury: "All these things are going through [Officer Hart's] mind; that there are substantial traffic violations being committed by this fleeing suspect and he has to consider the possibility of drugs or alcohol by the driver.

"So all these things are going through his mind and he elects to continue the pursuit for two minutes. *I don't think we want to second-guess that decision, ladies and gentlemen.* All pursuits are dangerous, and this one was as safe as could be expected for a pursuit. Officer Hart drives for a living. That is all he does all day long is drive. No innocent people were hurt. There were no accidents caused along the way and the chase was relatively under control.

"*Speaking of control, Thomas Hooper is the one who controlled the chase. . . .*" (Italics added.)

Although the trial court's interpretation of applicable law was reasonable in light of then-existing precedent, we find that the *Kisbey* interpretation of the broad scope of immunity under section 845.8 required the trial court not to send either theory of the City's negligence to the jury. In the alternative, the court should have granted the motion for judgment notwithstanding the verdict. We therefore reverse the judgment on the wrongful death cause of action with directions to the trial court to grant the motion for judgment notwithstanding the verdict and accordingly to enter judgment for the City. (Code Civ. Proc., § 629.)[16]

## DISPOSITION

The judgment entered on special verdict No. 1, wrongful death, and the order denying the motion for judgment notwithstanding the verdict are reversed with directions to the trial court to enter judgment for the City.

---

[16] Our disposition of this case renders moot both the City's claim of specific instructional error and Hooper's claim on cross-appeal that the order conditionally granting the City's motion for new trial on the ground of excessive damages was erroneous. It is likewise unnecessary to discuss Hooper's claims of error regarding her cause of action for negligent infliction of emotional distress; we affirm that portion of the judgment which denied her recovery on that theory.

However, that portion of the judgment entered on special verdict No. 2, negligent infliction of emotional distress, is affirmed.

Each party is to bear its own costs.

Wiener, Acting P. J., and Nares, J., concurred.

The petition of appellant Hooper for review by the Supreme Court was denied September 28, 1989.