[No. E007194. Fourth Dist., Div. Two. Apr. 15, 1991.]

RITSUKO KISHIDA et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Meserve, Mumper & Hughes, Elyn Chaum, William D. Coffee and Andrew Ulich for Plaintiffs and Appellants.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard D. Martland, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, Randall B. Christison and William Wood, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

McDANIEL, J.*—The underlying action was filed to recover damages for serious personal injuries suffered by Ritsuko and Akishige Kishida (plaintiffs) when their automobile collided with another, fleeing from California Highway Patrol (CHP) units during a high-speed chase. The State of California (defendant) was named as such on the theory that the two CHP officers engaged in the chase had done so negligently and thereby caused the collision between plaintiffs and the fleeing criminal suspect.

Of particular significance to the appeal, the complaint alleged that, "At all times herein mentioned, the STATE OF CALIFORNIA and its agent the CALIFORNIA HIGHWAY PATROL failed to adopt written policy procedures for vehicular pursuit in compliance with Section 17004.7 of the California Vehicle Code. Further, the STATE OF CALIFORNIA and its agent, the CALIFORNIA HIGHWAY PATROL, failed to comply with standard procedures for vehicular pursuits."

In its answer, defendant pleaded several affirmative defenses based on governmental immunity. Pertinent here is defendant's allegation that, contrary to what is quoted above, *it had adopted* a written policy on vehicle pursuits which complied with section 17004.7, subdivision (c) of the Vehicle Code.[1]

Defendant then moved for summary judgment. Plaintiffs' opposition to the motion did not raise any issue with reference to the observable, extrinsic

---

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1] Vehicle Code section 17004.7 provides in its entirety:

"(a)The immunity provided by this section is in addition to any other immunity provided by law. The adoption of a policy by a public agency pursuant to this section is discretionary.

"(b) A public agency employing peace officers which adopts a written policy on vehicular pursuits complying with subdivision (c) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle.

"(c) If the public entity has adopted a policy for the safe conduct of vehicular pursuits by peace officers, it shall meet all of the following minimum standards:

"(1) It provides that, if available, there be supervisory control of the pursuit.

"(2) It provides procedures for designating the primary pursuit vehicle and for determining the total number of vehicles to be permitted to participate at one time in the pursuit.

"(3) It provides procedures for coordinating operations with other jurisdictions.

"(4) It provides guidelines for determining when the interests of public safety and effective law enforcement justify a vehicular pursuit and when a vehicular pursuit should not be initiated or should be terminated.

"(d) A determination of whether a policy adopted pursuant to subdivision (c) complies with that subdivision is a question of law for the court."

facts falling within the framework of the pleadings. As a consequence, the trial court was faced only with an issue of law, namely the interpretation of section 17004.7 of the Vehicle Code and its application to the undisputed facts. The court resolved that issue of law in favor of defendant, and a judgment of dismissal as to defendant was entered accordingly.

In our view the trial court correctly resolved the issue noted, i.e., it ruled, by adopting a written policy on vehicular pursuits which complied with the statutory requirements for such a policy, that defendant was thereby entitled to the immunity accorded by the statute. We shall therefore affirm the judgment.

### Synopsis of Trial Court Proceedings

As already indicated, plaintiffs' complaint was a garden-variety effort to recover damages for personal injuries suffered in a vehicle collision. Summarizing certain of the allegations of such complaint, plaintiffs alleged that they had collided with a Ford Mustang driven recklessly by Bruce Thomas Bromley. Further, they alleged that the "CALIFORNIA HIGHWAY PATROL negligently, carelessly and recklessly engaged in a high-speed chase with BRUCE THOMAS BROMLEY on Highway 18 where it intersects with Running Springs Road, knowing that said hot pursuit was extremely dangerous to the general public."

Defendant, in its answer, posed a general denial under section 431.30 of the Code of Civil Procedure. It also alleged 19 affirmative defenses. Affirmative defense No. 19 alleged that: "Defendant is not liable for any injury or damages, if any there were, resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who was being, had been pursued, or believed he or she was being or had been, pursued by a peace officer, employed by defendant, in a motor vehicle, where defendant adopted a written policy on vehicle pursuits complying with Vehicle Code section 17004.7, subdivision (c). (Veh. Code, § 17004.7, subd. (b).)"

With the case thus at issue, defendant gave notice of motion for summary judgment. In support of such motion, defendant filed a separate statement of undisputed facts which included reference to the various items of evidence supporting the contents of the statement. Of interest here are statements No. 2 and No. 3. They stated: "2. Prior to June 24, 1988, the California Highway Patrol, an entity employing peace officers, had adopted a written policy on the safe conduct of vehicular pursuits by its officers which was in effect on June 24, 1988. [¶] 3. The policy adopted prior to June 24, 1988, and in effect on said date, provided: [¶] (a) supervisory control of a pursuit, if available; [¶] (b) procedures for designating the primary pursuit

vehicle and for determining the total number of vehicles to be permitted to participate in the pursuit; [¶] (c) procedures for coordinating operations with other jurisdictions; and [¶] (d) *guidelines for determining when the interests of public safety and effective law enforcement justify a pursuit, and when a pursuit should not be initiated or should be terminated.*" (Italics added.)

In their opposition, plaintiffs stated up front that they were "essentially in agreement with State's Statement of Facts. . . ." Particularly, they acknowledged that defendant had adopted a written policy on vehicular pursuits in compliance with Vehicle Code section 17004.7. Plaintiffs then went on to insist that adoption of the written policy noted, if it were to confer immunity, required further that the State also *implement* that policy in the form of adhering to it and proving such adherence in instances of actual high-speed chases. The foregoing led to plaintiffs' key contention, in opposing the motion, that, "there are triable issues of fact as to whether that policy was actually being followed" at the time of the collision between Bromley and plaintiffs.

The oral argument of the motion in the trial court narrowed the focus to an issue of law. Before the hearing, the trial court had announced its tentative ruling which was to grant the motion. At the outset of argument of the motion, the court said, "Although I am sympathetic to your cause, I think the statute is very clear. I don't think its ambiguous. That's the reason or basis of my tentative."

Counsel for plaintiffs argued that "adopt," where used in the statute with reference to the written policy on the safe conduct of vehicular pursuits, necessarily imported the requirement that such a policy be "implemented." Counsel argued, ". . . it would effectively make the statute meaningless if adoption did not, by necessity, include implementation."

After listening to counsel's argument, the court stated, "Your argument probably should be to the legislature. All they had to put into the statute is not only this word adopt, but to also add the word implement policy that they adopt." The court then amplified its perception of the issue by stating, [¶] "I'm not here to do the legislature's job. I don't see my job as a judge to do that. [¶] Like I say, I'm sympathetic to your cause because I think logically speaking it makes sense to me."

Based on its view of the issue before it, i.e., legal interpretation of a statute, the court concluded, because the CHP had adopted the necessary policy containing the standards and guidelines prescribed by the statute, defendant was entitled to the statutory immunity it had invoked. The court

granted the motion accordingly. An order reflecting the ruling noted and a summary judgment were later filed. This appeal followed.

## DISCUSSION

In pursuing their appeal, plaintiffs have reiterated precisely the position they took in the trial court. ▮ They have characterized the issue in the form of a question. "Is the immunity provided by Vehicle Code Section 17004.7 available to a public agency that does not implement a written pursuit policy?" We agree that the answer to that question is dispositive of the appeal.

▮ Turning to the proceedings in the trial court which provide the framework in which the issue is presented to us, we first observe that whenever a court must rule on a motion for summary judgment, the factual issue guidelines for such motion are precisely fixed by reference solely to the pleadings. (*Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988, 994 [216 Cal.Rptr. 796].) Plaintiffs' complaint alleged that the CHP acted negligently during the Bromley pursuit. In both its answer and motion for summary judgment, defendant raised the affirmative defense of governmental immunity based on the fact that the CHP had adopted a vehicular pursuit policy pursuant to Vehicle Code section 17004.7.

Vehicle Code section 17004.7, effective January 1, 1988, grants immunity from civil liability to a public entity for any personal injury or wrongful-death damages caused by the collision of a vehicle being operated by an actual or suspected lawbreaker while being pursued by police officers, *if the public entity employing the officers has adopted a written policy on vehicular pursuits which complies with the several requirements set forth in the statute.*

In their opposition to defendant's motion for summary judgment, plaintiffs did not dispute the fact that the CHP is a public agency employing peace officers, or that the collision occurred after January 1, 1988. Neither did plaintiffs dispute that the CHP's pursuit policy was in effect before the collision occurred, nor that the policy by its terms does not satisfy the requirements of Vehicle Code section 17004.7, subdivision (c). Indeed, as already noted, plaintiffs stated that they are "essentially in agreement with State's Statement of Facts set forth in its Motion for Summary Judgment." As plaintiffs concede in their brief on appeal, "The question [before us] is purely a matter of law and does not involve a review of the trial court's determination of factual issues."

▮ Specifically, plaintiffs argue, to claim the statute's grant of immunity, defendant must demonstrate, that during the chase in question the

officers actually *employed* the procedures prescribed for safe pursuits. In other words, if by "adopt," Vehicle Code section 17004.7 contemplates that an agency must *demonstrate* it actually *implemented its policy during a given chase* to avail itself of the grant of immunity, plaintiffs argue that the trial court erred as a matter of law in interpreting section 17004.7, with the result that summary judgment was improper. If, however, by "adopt," section 17004.7 simply requires proof that the agency has adopted a written policy, which includes the elements required by statute, then defendant's immunity defense successfully negates an essential element of plaintiffs' case and summary judgment was proper. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell*, 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].) We thus focus on what the statute requires as a condition for according immunity to those public entities that have "adopted a written policy on vehicular pursuits."

For the reasons given below, we hold that the word "adopt" as used in section 17004.7 of the Vehicle Code *does not* require a public entity employing peace officers, in order to invoke the immunity accorded by the statute, to prove that, during a particular chase, its policy on safe pursuits was actually practiced by the pursuing officer or officers.

In arriving at the position just stated, our objective was to ascertain the legislative intent in order that the purpose of the law be effectuated by our decision. (*Lehto* v. *City of Oxnard* (1985) 171 Cal.App.3d 285, 293 [217 Cal.Rptr. 450], review den. Dec. 5, 1985.) ▮ "It is well established that statutes must be given a reasonable construction that conforms to the apparent purpose and intention of the lawmakers." (*Ibid.*; *Jordt* v. *State Board of Education* (1939) 35 Cal.App.2d 591, 594 [96 P.2d 809].)

Vehicle Code section 17004.7, when passed, was part of a package popularly characterized as government tort reform legislation. According to the League of California Cities, one of the sponsors of the package, this provision "is intended to encourage agencies to adopt express guidelines which should reduce the frequency of accidents, while leaving to these agencies the fundamental law enforcement decisions about when to undertake a pursuit, free from threats of liability." (Office of Local Government Affairs, Enrolled Bill Rep., Assem. Bill No. 1912, as Amended Sept. 28, 1987 (1987-1988 Reg. Sess.) at p. 2.) The "Concurrence in Senate Amendments," prepared by the Assembly Office of Research on Assembly Bill No. 1912 states: "Supporters of the Senate amendments argue that the potential of civil liability for accidents caused by fleeing suspects may deter peace officers from pursuits to the detriment of public safety. Also, in some instances suspects have sought to recover from public entities for injuries incurred during a pursuit. This bill is intended to encourage public employers of

peace officers to adopt express safe pursuit guidelines. [¶] According to the sponsors, it is hoped that the adoption of guidelines will 'reduce the frequency of accidents' and help remove fear of liability for suspect-caused accidents from the decision of whether to undertake a pursuit." (Assem. File Analysis of the Assem. Office of Research, Concurrence in Sen. Amends., Assem. Bill No. 1912 (1987-1988 Reg. Sess.) p. 2; hereafter Assem. File Analysis.)

In *Hooper* v. *City of Chula Vista* (1989) 212 Cal.App.3d 442 [260 Cal.Rptr. 495], review denied September 28, 1989, Vehicle Code section 17004.7 was first analyzed. Section 17004.7 did not apply to the facts in *Hooper* because the events occurred before January 1, 1988, the date when the statute became effective; thus the language of *Hooper* is dictum. However, the court articulated two purposes of the statute. One such purpose is to free the entity from the fear of liability each time a chase occurs. In other words, through the grant of governmental immunity, following adoption of the specified policy, the employer-entity can expect peace officers to perform their jobs without fear that their employer will be sued.

With reference to the foregoing the *Hooper* court said, ". . . the Legislature gave some consideration to suspect-caused accidents . . . and took action to increase the immunity afforded to public entities . . . ." (212 Cal.App.3d at p. 456.)

Thus, the statute's primary purpose is *to confer immunity on governmental entities* which before the passage of this bill, enjoyed only limited immunity while its employees, the police officers, were entirely immune by statute. (Veh. Code, § 17004; Assem. File Analysis, *supra*, at p. 2.)[2] In other words, the focus of Vehicle Code section 17004.7 is on the governmental entity, not the actions of the police officers. ■ Given that section 17004.7 was passed for the express purpose of extending immunity to gov-

---

[2] The court in *Hooper* v. *City of Chula Vista, supra*, 212 Cal.App.3d 442 provides a concise history, before Vehicle Code section 17004.7 was enacted, of the development of governmental immunity while protecting the public. Government Code section 845.8 grants immunity to a public entity and its employees for injuries caused by persons escaping arrest or detention. Vehicle Code section 17001 imposes liability on a public entity for injury caused by an employee's negligent operation of a motor vehicle. Generally, " 'Public entities may be held liable, in the absence of a specific statutory immunity, for negligence in the course of executing and enforcing the law.' [Citation.]. Vehicular negligence is one such potential area of liability, and the specific statutory immunity provided by [Government Code] section 845.8 has not generally been found to be all-inclusive. [¶] Instead, the prevailing interpretation of [Government Code] section 845.8 has been that Vehicle Code section 17001 carves out a limited exception to the general rule of immunity for injuries caused by fleeing suspects, when police pursuit was in some way conducted negligently. . . . 'We then acknowledged the apparent conflict between the seemingly absolute grant of immunity provided to public entities and their employees by section 845.8 of the Tort Claims Act and the equally unconditional public entity liability imposed by Vehicle Code section 17001. . . ." (212 Cal.App.3d at pp. 449-450.)

ernmental entities on a given condition subsequent, then, in our view, adoption of the policy containing the statutory requirements is sufficient to meet the requirement necessary to enable it to claim immunity.

According to *Hooper*, the other purpose of Vehicle Code section 17004.7, is to reduce the frequency of accidents. (*Hooper* v. *City of Chula Vista*, *supra*, 212 Cal.App.3d 442, 456; Assem. File Analysis, *supra*, at p. 2.) Plaintiffs argue that an interpretation which does not require proof of the statute's practice during each pursuit would lead to absurd results because it would be sufficient to obtain immunity for the agency simply to draft a policy and leave it on the shelf to gather dust. However, such proposition begs the question, for it is reasonable to assume that the number of accidents during high speed chases can be expected to diminish once the policy is adopted. Statutorily, the policy must provide for entity control of the police officers during pursuits. (Veh. Code, § 17004.7, subd. (c).) More significantly, "[i]t will be presumed that the [police] officer[s] performed [their] duty." (*Whaley* v. *Jansen* (1962) 208 Cal.App.2d 222, 230 [25 Cal.Rptr. 184]; Civ. Code, § 3529.)[3]

■ Legislative intent is usually determined from the language of the statute itself. (*Lehto* v. *City of Oxnard*, *supra*, 171 Cal.App.3d 285, 293.) We review the words of the statute themselves so as to harmonize its various elements in context of the statute as a whole. (*Ibid.*, citing *Nunn* v. *State of California* (1984) 35 Cal.3d 616, 624-625 [200 Cal.Rptr. 440, 677 P.2d 846].) Vehicle Code section 17004.7 provides that the policy must contain four minimum standards to confer immunity on the employer-entity (Veh. Code, § 17004.7, subd. (c).), and the determination of whether the statute complies with the four criteria is a matter of law for the court to decide. (Veh. Code, § 17004.7, subd. (d).) ■ Nowhere does the statute require that the grant of immunity be predicated on proof that the pursuing officer followed the standards and the guidelines, contained in the policy, during a given chase for which immunity is sought. Had the Legislature intended that the employer-entity prove in each instance that the employee-officer followed the guidelines in order to invoke the immunity, the statute would have said so.[4]

---

[3] Citing Webster's New Collegiate Dictionary definition of "adopt," as "to take up or practice or use as one's own" or to accept formally and put into effect, plaintiffs argue, based on the plain and usual meaning of the word "adopt," that we must reverse the trial court's interpretation of the statute. However, plaintiffs have failed to demonstrate even semantically that by "adopt," meaning "to put into effect," that defendant must *prove* that it followed the policy in each chase.

[4] Plaintiffs also rely on the comments of the Assembly Judiciary Committee Republican Analysis, which states that there will be litigation over whether entities have properly complied with the guidelines they establish for conducting a pursuit had the author

At oral argument, counsel for plaintiffs, in urging the need for proof in each instance of compliance with the elements of the policy, directed the court's attention to paragraph 4 of subdivision (c) of the statute. More particularly, he pointed to the word "guidelines" as distinguished from the word "standards," used otherwise in the statute, as providing the predicate for his argument that "adopt" means "implement," which he urged means proving compliance during each chase for which immunity is sought.[5] The actual language of paragraph 4 militates against such argument. The word "guidelines" is modified by two participial phrases. The first is "determining when the interests of public safety and effective law enforcement justify a vehicular pursuit," and the second is "determining when a vehicular pursuit should not be initiated or should be terminated."

The plain meaning of these two phrases primarily focuses on matters to be considered *before a high-speed chase is even initiated*. More importantly, as a matter of plain English, they do not even remotely imply or import the requirement that there be proof that the policy procedures were actually followed during a given high-speed chase for which immunity is sought. As a consequence, counsel's argument in this respect was unpersuasive and therefore unavailing.

In sum, the purpose of Vehicle Code section 17004.7 is to provide an avenue for conferring an expanded immunity on the governmental entity employing peace officers who are likely to engage in high-speed pursuits and thus free the officers from the fear of exposing the entity to liability when making the determination of whether to engage in such a pursuit or to terminate it once it has begun. As a consequence, the statute, in addition to affording public immunity, will have the effect of reducing the danger to the public because, thanks to the policy, there will be fewer high-speed chases characterized by excessive risk.

Based on the foregoing, we hold that plaintiffs have not demonstrated that the trial court erred in interpreting the statute and in according immunity to defendant.

---

recommended nonconcurrence with the bill. This language by the judiciary committee evinces merely a concern that entities will be obliged to prove the elements of subdivision (c).

[5] Plaintiffs give no logical explanation of why "implement," assuming the statute requires it, must be translated to mean proving that the policy was adhered to in each chase. "Implement" could just as logically be interpreted to mean establishing a program of seminars or training sessions on the contents of the adopted policy for the purpose of assuring the greater likelihood that it would actually be followed in each instance of a high-speed chase.

## DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and Timlin, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 27, 1991. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.