[No. E011320 Fourth Dist., Div. Two. July 13, 1994.]

JASON BILLESTER, a Minor, etc., et al., Plaintiffs and Appellants, v. CITY OF CORONA et al., Defendants and Respondents.

COUNSEL

Bauer, Harris & McEvoy, Samuel M. Huestis, John Patrick McEvoy and Lauren John Udden for Plaintiffs and Appellants.

Fields & Creason, James A. Creason, Lauren L. McNerney and Maria K. Aarvig for Defendants and Respondents.

Rutan & Tucker, Hans Van Ligten and Mark A. Thompson as Amici Curiae on behalf of Defendants and Respondents.

OPINION

DABNEY, J.—On June 1, 1991, Jason Billester, then 13 years old, was injured when the vehicle in which he was a passenger was broadsided by a vehicle driven by a juvenile suspected of vehicle theft fleeing from a Corona police officer. The officer had pursued the juvenile through a red traffic signal and a stop sign. The juvenile was travelling at 55 to 65 miles an hour when the collision occurred at a third controlled intersection.

Jason and his parents (collectively referred to as plaintiffs) sued the City of Corona and the Corona Police Department (sometimes collectively referred to as Corona) and other parties not involved in this appeal for personal injuries and medical expenses. The trial court granted Corona's motion for

summary judgment. In doing so, the court concluded that Corona was immune from suit because the Corona Police Department's vehicular pursuit policy (hereafter, the pursuit policy)[1] complied with Vehicle Code section 17004.7.[2, 3] Judgment was entered in favor of Corona.[4]

On appeal, plaintiffs contend the pursuit policy does not meet the minimum standards of section 17004.7 so as to confer immunity on Corona. Specifically, plaintiffs contend the pursuit policy fails to provide: (1) for supervisory control of the pursuit, if available; (2) procedures for designating the primary pursuing vehicle and the total number of participating vehicles; (3) procedures for coordinating operations with other jurisdictions; and (4) guidelines for determining when pursuit should be initiated and terminated. Plaintiffs also contend section 17004.7 denies them equal protection of the law.

We conclude, as we discuss below, that the pursuit policy does meet the requirements of section 17004.7, subdivision (c), and Corona is thus immune from liability under section 17004.7, subdivision (b). We also conclude that plaintiffs' equal protection challenge is meritless. Thus, we affirm the judgment.

---

[1]A copy of the pursuit policy is attached as an appendix to this summary.

[2]Vehicle Code section 17004.7 is hereafter referred to as section 17004.7. All other section references in this opinion are to the pursuit policy unless otherwise indicated.

[3]Section 17004.7 provides, "(b) A public agency employing peace officers which adopts a written policy on vehicular pursuits complying with subdivision (c) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle.

"(c) If the public entity has adopted a policy for the safe conduct of vehicular pursuits by peace officers, it shall meet all of the following minimum standards:

"(1) It provides that, if available, there be supervisory control of the pursuit.

"(2) It provides procedures for designating the primary pursuit vehicle and for determining the total number of vehicles to be permitted to participate at one time in the pursuit.

"(3) It provides procedures for coordinating operations with other jurisdictions.

"(4) It provides guidelines for determining when the interests of public safety and effective law enforcement justify a vehicular pursuit and when a vehicular pursuit should not be initiated or should be terminated.

"(d) A determination of whether a policy adopted pursuant to subdivision (c) complies with that subdivision is a question of law for the court."

[4]The officer involved in the pursuit moved for summary judgment concurrently with Corona. Plaintiffs have conceded that the officer was entitled to summary judgment under Vehicle Code section 17004; however, neither the judgment nor the minute order refers to the officer's immunity under Vehicle Code section 17004. Plaintiffs do not contend on appeal that the court erred in entering judgment in favor of the officer.

DISCUSSION

I

*Immunity Under Vehicle Code Section 17004.7*

Section 17004.7 confers immunity on a public agency from liability arising from certain collisions occurring during vehicular pursuits by peace officers when the agency has adopted a written vehicular pursuit policy meeting certain minimum standards. However, the Legislature has worded section 17004.7 narrowly to grant immunity only when a written pursuit policy "complies with certain specific points to encourage safe police pursuits." (*Weiner* v. *City of San Diego* (1991) 229 Cal.App.3d 1203, 1210 [280 Cal.Rptr. 818].)

The trial court determined that the pursuit policy met the requirements of section 17004.7, subdivision (c), and Corona was therefore immune from liability. Plaintiffs' challenge to this determination presents solely issues of law, and this court must make an independent determination of the issues. (§ 17004.7, subd. (d); *Weiner* v. *City of San Diego, supra,* 229 Cal.App.3d at p. 1211.)

A. *Supervisory Control of Pursuit.*

 Plaintiffs contend that the pursuit policy fails to satisfy section 17004.7, subdivision (c)(1) which requires provision for supervisory control of the pursuit, if available.

Section 4420 of the pursuit policy addresses supervisory control of pursuits. The section states that the supervisor shall assume responsibility for:

"Seeing that no more than the required number of units is involved in the pursuit.

"Seeing that available aircraft have been requested.

"Seeing that proper radio frequency is being used.

"Affected allied agencies are being notified.

"The decision to request another agency's assistance.

"The decision to grant assistance in response to the request of another agency.

"The decision whether or not the pursuit should be discontinued."

In addition, section 4420.05 provides that the supervisor shall go to the place where the pursuit terminates to provide guidance and supervision.

Section 4420.10 provides that after the pursuit, the supervisor of the unit initiating the pursuit shall submit an analysis and critique of the pursuit to his own supervisor. Moreover, sections 4214 and 4216 provide that all police vehicles except the one dispatched and designated to respond to an emergency will stay in their assigned areas unless ordered to proceed to the scene by their supervisor or dispatcher. The supervisor will notify the first vehicle that a second vehicle is en route and will confirm that the dispatcher and the first vehicle receive that message. Section 4404 states that an officer must discontinue a pursuit when directed to do so by a supervisor. Section 4412.05 provides that an officer initiating a pursuit must notify the communications center and provide information about the conditions of the pursuit. Section 4418 provides that the dispatcher must immediately inform the supervisor of the pursuit and notify allied agencies as directed by the supervisor.

Although several courts have recently examined the sufficiency of vehicular pursuit policies of other public entities (*Berman* v. *City of Daly City* (1993) 21 Cal.App.4th 276 [16 Cal.Rptr.2d 143]; *Payne* v. *City of Perris* (1993) 12 Cal.App.4th 1738 [16 Cal.Rptr.2d 143]; *Colvin* v. *City of Gardena* (1992) 11 Cal.App.4th 1270 [15 Cal.Rptr.2d 234]; *Weiner* v. *City of San Diego, supra,* 229 Cal.App.3d 1203), none of those cases specifically addressed the pursuit policies' compliance with section 17004.7, subdivision (c)(1). However, in our view, Corona's pursuit policy adequately provides for supervisory control of pursuits. Numerous sections of the pursuit policy as set forth above call for the supervisor's being informed of the pursuit at the first opportunity and being involved as much as possible in decisions concerning the pursuit.

Plaintiffs contend the pursuit policy is inadequate because section 4418 does not require that a supervisor control the pursuit if a supervisor is available; rather, section 4418 requires only that a supervisor be notified. This argument ignores section 4420, which provides, "[u]pon being notified of a pursuit, the supervisor shall assume responsibility for the following. . . ."

Plaintiffs also contend the pursuit policy is inadequate because sections 4412.10 and 4418 of the pursuit policy are internally inconsistent. Section 4412.10 provides that the senior officer in the unit initiating the pursuit is accountable for the operation of the unit during the pursuit, the decision to discontinue pursuit, assuming command when the pursuit ends until a higher authority arrives, and requesting a second unit. Thus, section 4412.10 addresses the responsibilities of the officer on the scene. Section 4412.10 creates no conflict with the responsibilities of a supervising officer at headquarters, as defined in sections 4418 and 4420. The pursuit policy meets the requirements of section 17004.7, subdivision (c)(1).

**B.** *Designation of Primary Vehicle and Determination of Number of Vehicles in Pursuit.*

■ Plaintiffs next contend the policy fails to specify adequate procedures for "designating the primary pursuit vehicle and for determining the total number of vehicles to be permitted to participate at one time in the pursuit." (§ 17004.7, subd. (c)(2).)

1. *Designation of Primary Vehicle.*

Although the pursuit policy does not use the term "primary pursuit vehicle," the pursuit policy makes clear which unit fills that role. Section 4412 defines the responsibilities of the unit initiating pursuit. Among other things, the initiating officer must notify the communications center and provide specific information about the pursuit. (§ 4412.05.) The initiating officer has other defined responsibilities for the pursuit as set forth in section 4412.10. For purposes of Vehicle Code section 17004.7, subdivision (c)(2), the policy makes it clear that the unit initiating the pursuit is designated the primary pursuit vehicle.

2. *Determining Number of Units Involved.*

Section 4406 states, "Normally, pursuits should be limited to two police vehicles." Section 4414 states, "The officer(s) in the second unit joining the pursuit shall immediately notify the Communications Center that there are two units in the pursuit."

Section 4216 states that the immediate supervisor shall determine the need for a second police vehicle to respond to an emergency scene and shall order the second unit to do so. The supervisor shall also inform the first unit and the dispatcher and shall confirm that the first unit and the dispatcher understood the message.

Plaintiffs argue that although the pursuit policy states that normally only two police vehicles are to be involved in a pursuit, the policy does not state the circumstances that would justify a greater number of vehicles, and the policy does not make clear who has responsibility for assigning additional vehicles to the pursuit. Thus, plaintiffs argue, the pursuit policy does not meet the requirements of Vehicle Code section 17004.7, subdivision (c)(2).

Only one published case has reviewed the requirements of Vehicle Code section 17004.7, subdivision (c)(2). (*Colvin* v. *City of Gardena, supra,* 11 Cal.App.4th at p. 1286.) The policy under review in *Colvin* provided that ". . . the number of police units involved in a pursuit may vary with the circumstances and should be kept to a minimum. It directs the second and

subsequent units to communicate with the dispatch center and requires supervisors to assure no more than the required number of police units are involved in the pursuit." (*Colvin, supra,* 11 Cal.App.4th at p. 1286.) The court rejected this policy as inadequate under section 17004.7, subdivision (c)(2). The court explained, "These loose and conclusionary provisions do not amount to procedures for designating the primary pursuit vehicle and for determining the total number of vehicles permitted to participate at one time in the pursuit. The policy just reflects the obvious fact that some vehicle initiates the pursuit and states if the initiating vehicle is an unmarked police car or motorcycle, such vehicle should abandon the pursuit in favor of a marked four-wheeled unit. The policy also contemplates the participation of second and subsequent units. It then states in a conclusionary manner that the number of participating vehicles should be kept to a minimum." (11 Cal.App.4th at p. 1286.)

Here, in contrast, the pursuit policy specifies that normally only two police vehicles are to be involved in a pursuit, and the supervisor has responsibility for seeing that only the required vehicles are involved. (§ 4420.) The pursuit policy meets the requirements of section 17004.7, subdivision (c)(2).

C. *Coordinating Operations With Other Jurisdictions.*

■ Plaintiffs contend that the pursuit policy does not meet the requirement of section 17004.7, subdivision (c)(3) of providing "procedures for coordinating operations with other jurisdictions."

Sections 4408 and 4410 of the pursuit policy address pursuits extending into and originating in other jurisdictions. Section 4408 provides, "When a pursuit extends into an allied jurisdiction, the supervisor (or senior officer) in the pursuit should determine if the other area or allied agency should assume the pursuit. The following should be considered. [¶] The distance involved [¶] The pursuing officer's possible unfamiliarity with the new area [¶] Other pertinent facts [¶] If the pursuit is assumed by the other agency, the initiating officer should proceed to the termination point (if within a reasonable distance) as the back-up unit in order to provide information which may be required for the arrest. The assuming agency will then become the primary pursuer."

Section 4410 provides that for pursuits originating in other jurisdictions, "Notification by another agency of a pursuit in progress shall not be construed as a request to join in the pursuit. [¶] Units shall not become involved in pursuits unless requested to do so. [¶] Requests for assistance shall be reviewed and approved by a supervising officer or officer in charge prior to responding to the requests."

In addition, section 4418 provides that the dispatcher must "[n]otify[] allied agencies and specify[] if assistance is or is not requested, as directed

by the supervisor." Section 4420 provides that the supervisor shall be responsible for assuring that affected allied agencies are notified of the pursuit; for the decision to request assistance from other agencies; and for the decision whether to grant assistance requested by other agencies.

No published case has yet reviewed the requirements of section 17004.7, subdivision (c)(3). However, we conclude the pursuit policy complies with the requirements of section 17004.7, subdivision (c)(3). The pursuit policy establishes the supervisor's responsibility for notifying other agencies and for deciding whether to request assistance from other agencies and whether to respond to other agencies' requests for assistance. The policy establishes that the initiating vehicle becomes the back-up vehicle once another agency assumes pursuit. The policy restricts units from responding to other agencies' pursuits absent a request for assistance and approval by a supervisor. These procedures are adequate under section 17004.7, subdivision (c)(3).

D. *Guidelines for Initiating and Terminating Pursuits.*

Plaintiffs contend that Corona's vehicular pursuit policy is deficient in that it does not provide guidelines to officers for initiating and terminating vehicular pursuits, but rather leaves such determinations up to the subjective judgment of the officers.

The pursuit policy provides, "4220.05 *Pursuit.* In a pursuit, the office[r] must consider: [¶] Time [¶] Speed [¶] Distance [¶] Importance of, and the necessity for, apprehension [¶] Traffic in the immediate vicinity [¶] Assistance requested or available [¶] If at any point during the pursuit the officer feels that his life is in peril, the officer shall desist from further pursuit. When the officer knows that the person being pursued is intent upon continuing to evade arrest, the officer shall: [¶] Set up advanced assistance via radio [¶] If possible, reduce speed [¶] Notify dispatcher [¶] Proceed."

"[4202] *When to Initiate a Pursuit* [¶] Pursuits should normally be initiated when, in the officer's judgment, an individual clearly exhibits an intent to avoid arrest by using a vehicle to flee. The majority of pursuits originate from misdemeanor violations and this factor should be considered in the officer's decision.

"The objective of a pursuit is to apprehend a violator who refuses to voluntarily comply with the law requiring him to stop.

"The intent of the pursuit is to apprehend the subject(s) and bring them to trial for the offense(s) committed.

"The officer is never justified in arbitrarily using the highways with a willful and wanton disregard for the safety of himself or others in accomplishing this objective (21056 CVC).

"The key to successful conclusion of a pursuit and apprehension of evading vehicles is dependent upon proper vehicle operation, proper self-discipline, and sound professional judgment."

With respect to discontinuing pursuits, the pursuit policy states, "4404 *When to Discontinue a Pursuit*

"Under most circumstances, pursuits should be discontinued when:

"In the pursuing officer's judgment, a serious hazard is present to the public and/or the pursuing officers.

"The pursued vehicle's location is no longer definitely known.

"The subject(s) can be identified to the point where later apprehension can be accomplished.

"Directed to do so by a supervisor."

■ To be adequate under section 17004.7, subdivision (c)(4) a vehicular pursuit policy "must do more than simply advise the pursuing officers to exercise their discretion and use their best judgment." (*Payne* v. *City of Perris, supra,* 12 Cal.App.4th at pp. 1746-1747.) Instead, ". . . the policy must control and channel the pursuing officer's discretion by providing objective standards by which to evaluate whether the pursuit should be initiated or terminated. At the very least it should instruct and direct the officers on what factors should be considered in deciding whether to pursue the fleeing suspect." (*Id.* at p. 1747, fns. omitted.)

The policy this court rejected as inadequate in *Payne* merely stated that a pursuit should be discontinued when it "poses a serious and unreasonable risk of harm to the public or to the officer." (*Payne* v. *City of Perris, supra,* 12 Cal.App.4th at pp. 1747-1748.) The court noted that the policy failed to give the officers any guidance in how to determine whether the pursuit posed a serious and unreasonable risk of harm. Rather, the policy simply stated that the determination would be based on what was reasonably known to or perceived by the officers. The court concluded this policy left each officer free to interpret the guideline by whatever subjective standards he or she chose. The court therefore found the guideline was the equivalent of no guideline at all, in that it failed to provide any objective criteria to assist the officer in the exercise of discretion. (*Ibid.*)

In *Berman*, the court rejected as inadequate a pursuit policy that stated, " 'Pursuits should normally be initiated when, in the officer's judgment, an individual clearly exhibits an intent to avoid arrest by using a vehicle to flee.' " and " '(1) Officers intending to stop a vehicle should be within close proximity to the violator's vehicle before using the red lights and siren and attempting to stop the vehicle. . . . [¶] (2) Pursuit should be initiated and continued when such threat to safety is not out of proportion to the offense or offenses involved.' " (*Berman v. City of Daly City, supra,* 21 Cal.App.4th at p. 282.)

The court held that this policy did not meet the minimum requirements for immunity under section 17004.7. The court explained, "Although Daly City's pursuit policy does set forth general principles on initiating a pursuit, it does not provide officers in the field with sufficient 'guidelines for determining when the interests of public safety and effective law enforcement justify a vehicular pursuit . . . .' (§ 17004.7, subd. (c)(4).) For example, according to the policy, a pursuit could be initiated based upon any offense, even a minor Vehicle Code violation. . . .

"Moreover, based on the declared intent of the pursuit policy, it is unclear whether the 'threat to safety' refers to officer safety or public safety. The pursuit policy states: 'These guidelines are intended to reduce the hazards to officers engaged in hot pursuit and the public criticism following accidents involving pursuing vehicles.' [Citation.] Neither of these intentions coincide with the purpose of section 17004.7, subdivision (c)(4), which is to provide guidelines relating to *public* safety and effective law enforcement.

"Furthermore, there are no reasonably specific criteria to guide officers in determining when a threat to public safety is out of proportion to the offense or offenses involved. '[T]he policy must do more than simply advise the pursuing officers to exercise their discretion and use their best judgment.' [Citation.] The pursuit policy before us leaves that determination to the officer's subjective judgment. Such vague language does not meet the requirements of section 17004.7, subdivision (c)(4).) [Citations.]" (*Berman v. City of Daly City, supra,* 21 Cal.App.4th at p. 283.)

With respect to guidelines for termination of pursuits, in *Berman*, Daly City's pursuit policy stated that " 'The officer is expected to use sound professional judgment in deciding whether or not the threat to safety of further pursuit outweighs the benefit to the public should the arrest be made.' [Citation.]" (*Berman v. City of Daliy City, supra,* 21 Cal.App.4th at p. 283.) The policy added additional language identical to that of section 4404 of Corona's pursuit policy.

The *Berman* court held that such language was too vague to satisfy the requirements of section 17004.7 in that the policy "provide[d] insufficient guidance to officers regarding factors to consider when making that judgment" (*Berman* v. *City of Daly City, supra,* 21 Cal.App.4th at p. 283) and "the criteria listed are still insufficient to " 'control and channel the pursuing officer's discretion' to enable the officer to determine when a serious hazard is present or when continued pursuit of an identified suspect would serve no useful purpose. [Citation.]" (*Id.*, at p. 284.)

Here, in contrast, Corona's pursuit policy also lists the following factors an officer should consider during pursuits: time, speed, distance, the importance of and necessity for apprehension of the suspect, traffic in the vicinity, and the availability of assistance. The officer must also consider whether his life is in danger. (§ 4220.05.) These factors provide the additional guidance the courts found lacking in *Payne* and *Berman.* We conclude Corona's pursuit policy meets the requirements of section 17004.7, subdivision (c)(4).

## II

### *Equal Protection Challenge to Section 17004.7*

Plaintiffs next contend that section 17004.7 is unconstitutional because it denies them equal protection of the law. Article I, section 7 of the California Constitution guarantees that every person "may not be . . . denied equal protection of the laws" (*id.*, subd. (a)) and that "[a] citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens." (*Id.*, subd. (b).) Similarly, section 1 of the Fourteenth Amendment to the United States Constitution provides that no state may "deny to any person within its jurisdiction the equal protection of the laws."

Although the state may constitutionally draw distinctions between different groups of individuals, at a minimum the state must provide that " 'persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' [Citations.]" (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]) Moreover, a legislative classification of persons must bear a rational relationship to the statutory objective. (*Ibid.*) The rational basis standard applies to legislative classifications among personal injury plaintiffs. (*Woods* v. *Young* (1991) 53 Cal.3d 315, 327 [279 Cal.Rptr. 613, 807 P.2d 455].)

The court in *Weiner* wrote, "[The Legislature] narrowly worded the statute to only grant immunity where the suspect's vehicle is involved in the accident with an innocent third party and where the public agency has satisfied the requirement of a written policy which complies with certain

specific points to encourage safe police pursuits." (*Weiner* v. *City of San Diego, supra,* 229 Cal.App.3d at p. 1210.) Plaintiffs contend that the narrow wording of the statute creates a constitutional infirmity. Plaintiffs contend that section 17004.7 establishes two sorts of discriminatory classifications. First, it distinguishes between persons injured in pursuits conducted by peace officers whose employers have adopted vehicular pursuit policies and persons injured in pursuits conducted by peace officers whose employers have not adopted vehicular pursuit policies. Second, it treats persons injured in pursuits by collisions with suspects' vehicles differently from persons injured in pursuits by collisions with other vehicles in the area, pursuing police vehicles, and objects other than vehicles.

█ Courts have identified two legislative objectives for the public entity immunity established by section 17004.7. First, the statute is said to free police officers from the fear of exposing their employers to liability when engaging in high-speed pursuits. Second, it is said to reduce the frequency of accidents involving the public by encouraging public agencies to adopt safe pursuit policies. (*Kishida* v. *State of California* (1991) 229 Cal.App.3d 329, 335-338 [280 Cal.Rptr. 62]; *Weiner* v. *City of San Diego, supra,* 229 Cal.App.3d at pp. 1209-1210.) █ Plaintiffs contend neither of these objectives provides a rational basis for the statute's classifications.

Plaintiffs argue that although the state could deny recovery to *all* innocent persons injured during pursuits, section 17004.7 invidiously penalizes only certain innocent persons. Plaintiffs also contend the classifications established by section 17004.7 do not rationally relate to the legislative purpose of reducing the frequency of accidents involving the public during pursuits. Plaintiffs contend that the statute, in denying recovery to persons injured by suspects' vehicles as opposed to other instrumentalities foreseeably involved in the pursuit, does not protect the public. They argue that the safety of the public does not vary depending upon whether the suspect, the police, or a third party strikes the victim. They further argue that all innocent persons injured by any instrumentalities during a pursuit are similarly situated with respect to the purpose of the law, yet they do not receive like treatment.

The statute also establishes a distinction between victims struck by suspects in jurisdictions that have established pursuit policies and those that have not. In the first instance, the victim is not entitled to recovery; in the second instance, the victim may recover. Plaintiffs contend the legislative scheme makes it entirely fortuitous whether a particular person will be entitled to recover for injuries suffered during a pursuit, and the statute is thus irrational.

Plaintiffs note that in *Malloy* v. *Fong* (1951) 37 Cal.2d 356 [232 P.2d 241] and *Silva* v. *Providence Hospital of Oakland* (1939) 14 Cal.2d 762 [97 P.2d

798], the court struck down charitable immunity in California as not founded upon a rational basis. Plaintiffs point out that Civil Code section 1714 sets forth the general policy in California to afford protection from negligence to everyone. In *Brown, supra,* the court struck down the automobile guest statute on equal protection grounds, in that none of the rationales for the statute provided a rational basis for the arbitrary classification created by the statute.

In *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], the court struck down the entire California governmental immunity scheme as it existed at the time. The *Brown* court observed, "Although the *Muskopf* decision itself did not rest on constitutional grounds, because the governmental immunity doctrine at issue was of judicial rather than legislative creation, the opinion's reasoning—relying on the unequal treatment afforded similarly situated persons—parallels the constitutional principle embodied in our state and federal equal protection clauses. . . ." (*Brown* v. *Merlo, supra,* 8 Cal.3d at p. 881.)

Corona and amici curiae contend that section 17004.7 does not violate equal protection principles because the Legislature had a rational basis for drawing the distinctions the statute creates. ■ Moreover, although plaintiffs contend the Legislature must either extend immunity to all cases or forego it completely, courts have rejected this "all or nothing" approach: "[T]he Legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases that might possibly be reached [citation], but is free to recognize degrees of harm and make restrictions affecting those classes of cases wherein the need is deemed to be clearest. [Citation.] The Legislature . . . is at liberty to select one phase of a problem for appropriate action without the necessity of including all others that might be affected in the same field of legislation." (*People* v. *Banner* (1992) 3 Cal.App.4th 1315, 1322-1323 [5 Cal.Rptr.2d 125].) However, ". . . when the legislative body proposes to address an area of concern in less than comprehensive fashion by 'striking the evil where it is most felt,' its decision as to where to 'strike' must have a rational basis in light of the legislative objectives." (*Id.* at p. 1323.) ■ Thus, we examine whether the Legislature could rationally have concluded that the need for public entity immunity is clearest when an injury is caused by a suspect fleeing from a peace officer of a public agency that has adopted a suitable written pursuit policy.

In enacting section 17004.7, the Legislature attempted to strike a balance between two competing needs: the need for giving law enforcement agencies adequate latitude in apprehending fleeing criminal suspects and the need to prevent traffic accidents. Section 17004.7 thus addresses the evils of the

inhibiting effects of the threat of liability on public agencies for injuries occurring during pursuits and the frequency with which traffic accidents occur during such pursuits.

The Legislature decided to strike the balance in cases in which a fleeing suspect injures another while the suspect is being pursued by a peace officer whose employer has adopted a written pursuit policy. Plaintiffs argue that the statute irrationally distinguishes between victims who are injured by the fleeing suspect and victims who are injured by all other instrumentalities, such as the peace officer's vehicle, other vehicles in the pursuit area, and objects other than vehicles. However, because third party drivers and inanimate objects are not being pursued, the Legislature could reasonably conclude that they do not generally exhibit the high speeds and reckless driving characteristic of fleeing suspects in police pursuits. Thus, the Legislature could rationally conclude that third party drivers and inanimate objects do not pose the same risks to other members of the public during pursuits as do the suspects being pursued. The Legislature could also rationally assume that third party drivers generally comply with their duty to obey the rules of the road, including the duty to stop when police vehicles sounding sirens and flashing lights approach.

Plaintiffs also contend that the statute favors that class of victims injured by peace officers' vehicles. Section 17004.7 does not cover accidents in which victims are injured by peace officers' vehicles during pursuits of suspects. Unlike fleeing suspects, peace officers can be controlled by the public agencies for which they work. This provides a rational basis for distinguishing between the two categories. First, the Legislature could rationally have concluded it was appropriate to hold public agencies accountable for the actions of their employees during pursuits, but not for the actions of the suspects being pursued. Second, the Legislature could rationally have concluded that providing immunity when peace officers injure innocent persons during pursuits would have removed incentives for public agencies to ensure the safe driving of their peace officers during pursuits. Holding public agencies liable for injuries inflicted by their employees provides strong incentive for public agencies to control the training and skill of their peace officers and the mechanical soundness of police vehicles.

Finally, plaintiffs point out that the statute differentiates between victims based on whether a particular public agency has adopted a written pursuit policy or not. However, the Legislature could rationally have concluded that when a public agency adopts a pursuit policy with adequate guidelines, suspects pursued by peace officers employed by that agency pose less threat to the public than when no standards guide the officers' conduct of the

pursuit. Moreover, the possibility of immunity provides a strong incentive for public agencies to promulgate written pursuit policies, thus increasing the likelihood that chases will be conducted safely.

■ The mere fact that different classes of victims are treated disparately is not determinative. (*Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 132-133 [216 P.2d 825, 13 A.L.R.2d 252].) Distinctions made among victims do not necessarily violate equal protection guarantees. In *Werner*, Civil Code section 48a was challenged on equal protection grounds because it limits liability for defamation damages for certain media defendants unless the victim demands and fails to receive a correction. Victims defamed by private individuals and other types of media defendants are not prevented from receiving their full measure of damages. The effect of Civil Code section 48a is to drastically reduce certain victims' ability to recover because, due to no fault of their own, they were defamed in one medium rather than another. The California Supreme Court nonetheless upheld the statute against the equal protection challenge, holding that "[i]t is for the Legislature . . . to choose between conflicting policies, and this court may not presume that in reaching its decision it acted upon improper motives." (*Werner, supra*, 35 Cal.2d at p. 129.) The court therefore examined whether the classification among defendants bore "a reasonable relationship to the objectives the Legislature sought to achieve by enacting section 48a." (*Id.* at p. 132.) The court concluded the Legislature's balancing of interests had not led to an irrational compromise.

■ We reach the same conclusion in the present case. In striking a balance between competing objectives, the Legislature did not set up irrational classifications. The legislative grant of immunity under section 17004.7 does not violate equal protection guarantees.

DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and McDaniel, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied October 12, 1994.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.

APPENDIX

FOREWORD

The Corona Police Department Manual has been

officially approved by the management of the

City of Corona and is now in effect and enforce-

able. Its provisions are subject to amendment

when required in the best interests of the City.

/Signature/
James D. Wheaton
City Manager

June 1, 1985
Revised Nov. 1988

2/4200

Chap. 4200 EMERGENCY VEHICLE OPERATION

4202 *Obedience to Rules of the Road*

At all times Police Officers shall drive their assigned vehicles in compliance with the provisions of the rules governing driving and parking, unless the vehicle is being driven in response to an emergency.

4204 *Authorized Emergency Vehicle*

Any publicly-owned vehicle operated by any police department, sheriff's department or California Highway Patrol personnel. (For a complete list, refer to California Vehicle Code 165.)

4206 *Exemption of Authorized Emergency Vehicles*

The driver of an authorized emergency vehicle is exempt from certain provisions of the Vehicle Code; however, the exemption applies only when the vehicle is being operated under one of the following conditions.

- Emergency Calls. In response to an emergency call or while engaged in rescue operations.

- Pursuit. When in the immediate pursuit of an actual or suspected violator of the law.

- Fires. In response to, but not returning from, a fire alarm.

4206.05 *Conditions Under Which Exemption Applies.* The three stipulations of the preceding exemptions apply only when the following conditions are adhered to.

- Siren. If the driver of the vehicle sounds a siren as may be reasonably necessary to give warning of the approaching emergency vehicle.

- Red Light. Displays a lighted red light visible from the front as a warning to other drivers and pedestrians.

Neither the siren alone nor the red light is sufficient to receive the benefits from the exemption; both must be used (21055 CVC).

4208 *Must Drive With Due Caution*

The officer is neither relieved from the duty to drive with due regard for the safety of all persons using the highway nor is he protected from the consequence of an arbitrary exercise of the privileges granted him in the operation of an emergency vehicle (21056 CVC).

4210 *Emergency Defined*

Emergency, by definition, is the unforeseen combination of circumstances which calls for immediate action. It is difficult to accept this definition in terms of application by the police service, as one set of circumstances may constitute an emergency under different, though similar, circumstances. Therefore, to determine an emergency, we must rely on good judgment based on broad experience.

4212 *Only One Vehicle Dispatched*

Only one police vehicle will be dispatched and designated to respond to the scene of an emergency and to use red light and siren, except as otherwise provided in the following paragraphs.

4214 *Unassigned Vehicles to Stay in Their Areas*

All other police vehicles will remain in their assigned areas and proceed to the scene only if ordered to do so by the immediate supervisor or dispatcher; if so ordered, the officers will observe all speed and traffic laws en route, except as provided in the following paragraphs.

4216 *Assignment of Second Emergency Vehicle*

If, in the opinion of the immediate supervisor, there is a need for any other police vehicle to respond Code 3 to the scene of an emergency, he shall so order and shall also notify the police vehicle originally dispatched that the second unit is en route Code 3 and state the approximate route. The immediate supervisor shall make certain that the first vehicle and the dispatcher both copied and understood this radio conversation.

4218 *Siren Sounded As Needed*

When responding to an emergency call, the siren need not be sounded continuously, but only when the "rules of the road" are being violated. When an officer is using the red light and siren, he is asking for the right to use the roadway in a manner that will conflict with the ordinary rights of other highway users. Therefore, the officer shall exercise judgment in the use of the siren at those locations where he has reason to believe the conflict might occur, such as the following examples.

- Intersections. At intersections, including traffic controlled intersections, where there is always the possibility of conflict with vehicles and pedestrians.

- Heavy Traffic. In locations where there is heavy traffic or congestion.

- Restricted View. Locations on the highway where the view is restricted, such curves, crests, or grades.

- Parks. Playground or park areas, when in use.

- Driveways. Entrances and exits to shopping centers or other private driveways during peak hours.

The siren shall be sounded before reaching an intersection or at other locations, as mentioned above, in sufficient time to allow people adequate time to adjust themselves mentally, and react physically in order to stop or otherwise yield.

4220 *Code 3 Operations*

Code 3 operations fall into one of the following two general categories.

4220.05 *Pursuit.* In a pursuit, the office must consider:

- Time

- Speed

- Distance

- Importance of, and the necessity for, apprehension

- Traffic in the immediate vicinity

- Assistance requested or available

If at any point during the pursuit the officer feels that his life is in peril, the officer shall desist from further pursuit. When the officer knows that the person being pursued is intent upon continuing to evade arrest, the officer shall:

- Set up advanced assistance via radio
- If possible, reduce speed
- Notify dispatcher
- Proceed

4220.10 *Authorized Code 3.* Officers may roll Code 3 for life-threatening situations. Some examples follow.

- No detail traffic accident
- Injury traffic accident
- Medical aid
- Attempted suicide
- Officer needs assistance
- Shooting in progress or just occurred

Officer may consider traffic conditions and the distance he has to travel to reach his destination in determining if he will travel Code 3 to the call. The dispatcher will advise the officer if other emergency equipment is dispatched.

2/4400

Chap. 4400 PURSUITS

4202 *When to Initiate a Pursuit*

Pursuits should normally be initiated when, in the officer's judgment, an individual clearly exhibits an intent to avoid arrest by using a vehicle to flee. The majority of pursuits originate from misdemeanor violations and this factor should be considered in the officer's decision.

- The objective of a pursuit is to apprehend a violator who refuses to voluntarily comply with the law requiring him to stop.
- The intent of the pursuit is to apprehend the subject(s) and bring them to trial for the offense(s) committed.
- The officer is never justified in arbitrarily using the highways with a willful and wanton disregard for the safety of himself or others in accomplishing this objective (21056 CVC).
- The key to successful conclusion of a pursuit and apprehension of evading vehicles is dependent upon proper vehicle operation, proper self-discipline, and sound professional judgment.

4404 *When to Discontinue a Pursuit*

Under most circumstances, pursuits should be discontinued when:

- In the pursuing officer's judgment, a serious hazard is present to the public and/or the pursuing officers.

- The pursued vehicle's location is no longer definitely known.
- The subject(s) can be identified to the point where later apprehension can be accomplished.
- Directed to do so by a supervisor.

4406 *Pursuit Units*

- Normally, pursuits should be limited to two police vehicles.
- It is the intention of the policy that unidentifiable police units be relieved of prime pursuit responsibility as soon as possible.
- Officers in all other units should remain away from the pursuit, but remain alert to its progress and location, and refrain from all but emergency radio traffic.

4408 *Pursuits Into Other Jurisdictions*

When a pursuit extends into an allied jurisdiction, the supervisor (or senior officer) in the pursuit should determine if the other area or allied agency should assume the pursuit. The following should be considered.

- The distance involved
- The pursuing officer's possible unfamiliarity with the new area
- Other pertinent facts

If the pursuit is assumed by the other agency, the initiating officer should proceed to the termination point (if within a reasonable distance) as the back-up unit in order to provide information which may be required for the arrest. The assuming agency will then become the primary pursuer.

4410 *Pursuits Originating in Other Jurisdictions*

- Notification by another agency of a pursuit in progress shall not be construed as a request to join in the pursuit.
- Units shall not become involved in pursuits unless requested to do so.
- Requests for assistance shall be reviewed and approved by a supervising officer or officer in charge prior to responding to the requests.

4412 *Initiating Pursuit Units*

4412.05 *Initiating Officer to Notify Communications Center.* The officer initiating the pursuit shall immediately notify the Communications Center that a pursuit is under way, providing the following information.

- The known law violation or reason for the pursuit
- Description of the vehicle pursued
- Location and direction of travel on a continuing basis
- Number and description of known occupants of the pursued vehicle
- Speed of the fleeing vehicle on a continuing basis

4412.10 *Initiating Unit Accountability.* The senior officer in the unit initiating the pursuit shall be held accountable for the following.

- Operation of the unit during pursuit
- The decision whether or not to discontinue the pursuit
- Assumption of command at the terminal point of the pursuit until relieved by a higher authority
- Request for a second unit

4414 *Secondary Unit*

The officer(s) in the second unit joining the pursuit shall immediately notify the Communications Center that there are two units in the pursuit.

4416 *Aerial Surveillance*

- Any available law enforcement aircraft should be utilized as quickly as possible.
- The aero unit shall notify the Communications Center as soon as it is in position to follow the pursued vehicle.
- The aero unit is responsible for advisory information only, unless otherwise directed by proper authority.

4418 *Communications Center (Dispatch) Responsibility*

- Initiating an emergency radio traffic situation and the selection of the correct frequency.
- Immediately informing the on-duty supervisor.
- Notifying allied agencies and specifying if assistance is or is not requested, as directed by the supervisor.
- Immediately providing registration and wants information.
- Periodic reporting of pursuit progress to all units.

4420 *Patrol Supervision Responsibility*

Upon being notified of a pursuit, the supervisor shall assume responsibility for the following.

- Seeing that no more than the required number of units is involved in the pursuit.
- Seeing that available aircraft have been requested.
- Seeing that proper radio frequency is being used.
- Affected allied agencies are being notified.
- The decision to request another agency's assistance.
- The decision to grant assistance in response to the request of another agency.
- The decision whether or not the pursuit should be discontinued.

4420.05 *Supervisor Responsibility at Termination of Pursuit.* The supervisor of the jurisdiction where the pursuit ends and the supervisor of the jurisdiction initiating the pursuit should proceed to the terminating point if at all practical, in order to provide guidance and the necessary supervision.

4420.10 *Analysis and Critique.* The supervising officer of the unit initiating the pursuit shall submit an analysis and critique of the pursuit to his supervisor.

- Supervisors in each agency having units involved should submit an analysis and critique of that portion of the pursuit involving units from their respective agency.

- It may be appropriate to have each officer involved submit a report and critique on his own involvement with the pursuit and subsequent events.

4422 *Ad Hoc Committee Review*

- Periodic agency ad hoc committee reviews shall be established to ensure that pursuit critiques are reviewed and the guidelines updated, as necessary.

2/4600

Chap. 4600 CODE 11-99 OPERATIONS

An 11-99 operation must be considered by all law enforcement agencies to be the most urgent request that can be made for immediate help. In order to effectively protect life and prevent indiscriminate response from all units within radio range, this controlled response procedure has been established.