[No. C026528. Third Dist. Mar. 31, 1998.]

PAMELA KETCHUM et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Poswall & White, John M. Poswall and Aram Kouyoumdjian for Plaintiffs and Appellants.

Daniel L. Lungren, Attorney General, Margaret A. Rodda, Assistant Attorney General, Darryl Doke, James H. Wernicke and Alberto L. Gonzalez, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**MORRISON, J.**—Plaintiffs, daughters of the deceased, brought a wrongful death action against the State of California (the State); their mother died from injuries she received after being struck by a car that was being pursued by the California Highway Patrol (CHP). The trial court granted the State's motion for summary judgment on the basis that the State had immunity under Vehicle Code section 17004.7 (section 17004.7). Plaintiffs appeal from the ensuing judgment, contending section 17004.7 violates due process; the CHP has not validly adopted a pursuit policy pursuant to section 17004.7 because the policy was signed by the deputy commissioner rather than the Commissioner of the CHP; and the policy fails to comply with subdivision (c) of section 17004.7. We affirm.

### BACKGROUND

Plaintiffs brought suit against the State, the County of Sacramento (the County), and Duane Victor Hall. They alleged their mother, Norma Mick,

was involved in an accident at the intersection of Fair Oaks Boulevard and Madison Avenue in the County. Mick's car was struck by a car driven by Hall. She died from her injuries. Hall was being pursued by officers from the CHP and the County Sheriff's Department. The pursuit began in the early afternoon after a deputy sheriff determined that the license on Hall's car had expired. The deputy attempted an enforcement stop and Hall fled. The pursuit lasted 45 minutes at high speeds, following a convoluted course through the northeastern section of the County. It ended when Hall ran a red light, striking Mick's car and other vehicles, and Hall was taken into custody.

Plaintiffs alleged the State was negligent in conducting the pursuit, failing to adhere to the rules and guidelines in the CHP Officer Safety Manual. They further alleged the State had failed to adopt a written pursuit policy as required by section 17004.7 for immunity.

The State demurred, contending it had immunity under section 17004.7. A copy of the CHP pursuit policy was filed under seal. The court overruled the demurrer, finding the State had not established that it had adopted a written pursuit policy.

Plaintiffs obtained a default judgment against Hall. The County successfully moved for summary judgment.

The State moved for summary judgment. It provided the declaration of James Smith, Commissioner of the CHP from March 31, 1983, to December 30, 1988. Prior to that he had been commander of the planning and analysis division. In that capacity he worked on a study on police pursuits, gathering data for the development of guidelines. A proposed pursuit policy was developed by staff. He approved the policy and sent it to the deputy commissioner for approval. He asserted that a policy is adopted on the date it is signed by the deputy commissioner; it is not necessary that it be signed by the commissioner. As commissioner, he issued an order that all existing policies remain in effect. Declarations of subsequent commissioners stated they had issued the same order upon taking command.

Plaintiffs objected to Smith's declaration as containing legal conclusions. They opposed summary judgment, arguing section 17004.7 was unconstitutional; the policy had not been adopted because the commissioner had not signed it; and the policy failed to comply with subdivision (c) of section 17004.7.

The court ruled that section 17004.7 was constitutional and the policy complied with the statute. The court requested supplemental briefing on the issue of whether the pursuit policy was adopted by the CHP. The parties

stipulated the trial court could resolve any factual issues necessary to resolve this issue.

The State provided additional declarations that the deputy commissioner had authority to sign a policy in the commissioner's absence. Glendon Craig, commissioner in 1982, declared he had endorsed the pursuit policy; the deputy commissioner signed it while the commissioner was on vacation. The commissioner further stated the CHP has "a plural executive organizational structure which permits the deputy Commissioner to sign orders and approve policies on behalf of the commissioner." Gerald Clemons, deputy commissioner in 1982, described the CHP's organizational structure in the same terms. He stated he had independent authority to sign the approval of the pursuit policy and that he would not have done so without the support and approval of the commissioner.

The court granted the State's motion for summary judgment and entered judgment for the State.

## DISCUSSION

### I

Section 17004.7 was part of a package popularly characterized as government tort reform legislation. According to a sponsor, the section " 'is intended to encourage agencies to adopt express guidelines which should reduce the frequency of accidents, while leaving to these agencies the fundamental law enforcement decisions about when to undertake a pursuit, free from threats of liability.' " (*Kishida* v. *State of California* (1991) 229 Cal.App.3d 329, 335 [280 Cal.Rptr. 62].)

Section 17004.7 provides in part: "(a) The immunity provided by this section is in addition to any other immunity provided by law. The adoption of a policy by a public agency pursuant to this section is discretionary. [¶] (b) A public agency employing peace officers which adopts a written policy on vehicular pursuits complying with subdivision (c) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle."

Plaintiffs contend section 17004.7 violates the due process clauses of both the federal and state Constitutions. (U.S. Const., Amend. XIV, § 1; Cal. Const., art. I, § 7.) Plaintiffs argue that since public agencies "know . . . that police pursuits claim the lives of innocent bystanders," granting

such agencies immunity allows them to deprive persons of life without due process of law.[1] Plaintiffs contrast the lack of due process afforded the victims of police pursuits with that afforded death row inmates.

Plaintiffs cite no authority for their proposition that a grant of immunity for torts committed by public agencies violates due process. Generally, immunity statutes have withstood this type of constitutional challenge. For example, the California Tort Claims Act (Gov. Code, § 815 et seq.) has been held not to violate due process. (*Stanley* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 575, 578-580 [121 Cal.Rptr. 842]; *Datil* v. *City of Los Angeles* (1968) 263 Cal.App.2d 655, 660-661 [69 Cal.Rptr. 788].)

An argument similar to that made by plaintiffs was rejected in *Martinez* v. *California* (1980) 444 U.S. 277 [100 S.Ct. 553, 62 L.Ed.2d 481]. Survivors of a 15-year-old girl killed by a parolee brought suit against the State, contending the State officials responsible for the decision to release the parolee were liable in damages for the harm he caused. Defendants' demurrer was sustained on the basis of complete immunity under Government Code section 845.8, subdivision (a). Plaintiffs argued the statute violated due process. The United States Supreme Court rejected the contention: "Like the California courts, we cannot accept the contention that this statute deprived Thomas' victim of her life without due process of law because it condoned a parole decision that led indirectly to her death. The statute neither authorized nor immunized the deliberate killing of any human being. It is not the equivalent of a death penalty statute which expressly authorizes state agents to take a person's life after prescribed procedures have been observed. This statute merely provides a defense to potential state tort-law liability. At most, the availability of such a defense may have encouraged members of the parole board to take somewhat greater risks of recidivism in exercising their authority to release prisoners than they otherwise might. But the basic risk that repeat offenses may occur is always present in any parole system. A legislative decision that has an incremental impact on the probability that death will result in any given situation—such as setting the speed limit at 55-miles-per-hour instead of 45—cannot be characterized as state action depriving a person of life just because it may set in motion a chain of events that ultimately leads to the random death of an innocent bystander." (*Martinez* v. *California, supra*, 444 U.S. 277, 281 [100 S.Ct. 553, 557, 62 L.Ed.2d 481, 486-487].)

The high court noted that the Legislature has broad power to control governmental tort liability, limited only by the restriction that such power

---

[1]"The published decisional authorities of this state reflect the frequency of harm caused by pursuit of fleeing lawbreakers." (*People* v. *Schmies* (1996) 44 Cal.App.4th 38, 54, fn. 10 [51 Cal.Rptr.2d 185].)

not be exercised in an arbitrary fashion. It found no difficulty in accepting the conclusion there was a rational relationship between the State's purposes and the statute. (*Martinez* v. *California, supra,* 444 U.S. at p. 282 [100 S.Ct. 557, 62 L.Ed.2d at p. 487].) The court declined to pass upon the wisdom of the Legislature's policy determination to grant absolute immunity to parole decisions; it could not be denied that immunity rationally furthered a policy that reasonable lawmakers could favor. (*Id.* at p. 283 [100 S.Ct. 558, 62 L.Ed.2d at p. 488].)

The same reasoning applies here. While high-speed police pursuits, like parole releases, may result in harm or even death to innocent bystanders, the grant of immunity to those making such decisions does not authorize or immunize deliberate killings. Rather, the statute is the result of a legislative decision to grant immunity when a specific policy on pursuits has been adopted to reduce accidents, while leaving law enforcement free to adopt the appropriate methods for apprehending lawbreakers. Since there is a rational relationship between the legislative policy and the statute, there is no due process violation. (*Martinez* v. *California, supra,* 444 U.S. at p. 282 [100 S.Ct. 557, 62 L.Ed.2d at p. 487].)

Plaintiffs argue that *Martinez* is not controlling because it involves a different immunity statute. They note recent federal cases that suggest a police officer may be subject to suit under 42 United States Code section 1983 for violating a person's substantive due process rights by conducting a high-speed pursuit with a deliberate indifference or reckless disregard for life and safety. This issue is currently before the United States Supreme Court in *Lewis* v. *Sacramento County* (9th Cir. 1996) 98 F.3d 434, certiorari granted June 2, 1997, __ U.S. __ [117 S.Ct. 2406, 138 L.Ed.2d 173]. These cases provide no assistance to plaintiffs; they do not address the immunity statute at issue here and plaintiffs have not pleaded a federal civil rights claim against the State. (See *McGee* v. *City of Laguna Beach* (1997) 56 Cal.App.4th 537, 547, fn. 6 [65 Cal.Rptr.2d 506].)

Plaintiffs further contend the immunity statute violates due process because it grants immunity once a pursuit policy is adopted, regardless of whether the policy is followed. The Legislature can presume that once a policy is adopted, it will be followed. (Evid. Code, § 664; Civ. Code, § 3529.) More fundamentally, plaintiffs ignore the purpose of immunity statutes. ■ "[T]he purpose of Vehicle Code section 17004.7 is to provide an avenue for conferring an expanded immunity on the governmental entity employing police officers who are likely to engage in high-speed pursuits and thus free the officers from the fear of exposing the entity to liability when making the determination of whether to engage in such a pursuit or to terminate it once it has begun." (*Kishida* v. *State of California,*

*supra*, 229 Cal.App.3d 329, 338.) This purpose is in keeping with the general purpose of governmental immunity to shield government officials from disabling threats of liability and second-guessing as to the exercise of their discretion. (*Grenier* v. *City of Irwindale* (1997) 57 Cal.App.4th 931, 939 [67 Cal.Rptr.2d 454]; *Martinez* v. *County of Los Angeles* (1996) 47 Cal.App.4th 334, 342 [54 Cal.Rptr.2d 772].) ■ This purpose cannot be accomplished by merely shifting the inquiry from whether the pursuit was reasonable to whether the pursuit complied with the policy. Plaintiffs offer no authority that due process requires immunity attach only when the policy is followed.

## II

■ Section 17004.7 provides immunity "if, *but only if*, the specified written policy is adopted." (*Thomas* v. *City of Richmond* (1995) 9 Cal.4th 1154, 1162 [40 Cal.Rptr.2d 442, 892 P.2d 1185], italics in original.) Plaintiffs contend that section 17004.7 provides no immunity in this case because the CHP failed to "adopt" a written pursuit policy. They contend a pursuit policy may be validly adopted only by the highest ranking officer of the agency, here, the Commissioner of the CHP. The undisputed facts show the approval form was signed by a deputy commissioner. Plaintiffs contend such act is insufficient for adoption.

The issue of adoption was the most troublesome for the trial court. It overruled the State's demurrer because the State had not established that a written pursuit policy was adopted. The bulk of the declarations supporting the motion for summary judgment addressed this issue. The trial court requested additional briefing on this issue, and the parties stipulated the trial court could resolve any factual issues necessary to resolve the issue.

The State provided declarations that the deputy commissioner had authority to sign the approval form to adopt the policy, it was not necessary for the commissioner to sign the form, and adoption occurred once the deputy commissioner signed the form. Plaintiffs object to these declarations on the basis they set forth improper legal conclusions. They argue simply, "These statements surely exceeded the bounds of the declarants' competence as witnesses." The trial court overruled the objections, and we find no error in this ruling. The declarations set forth facts as to the CHP procedures and the steps taken in approving the pursuit policy. Whether these steps were sufficient to constitute a valid adoption under section 17004.7 remained a question of law for the trial court.

Plaintiffs rely on *Brumer* v. *City of Los Angeles* (1994) 24 Cal.App.4th 983 [29 Cal.Rptr.2d 515], and *Colvin* v. *City of Gardena* (1992) 11 Cal.App.4th 1270 [15 Cal.Rptr.2d 234] for the proposition that for immunity under

section 17004.7 only the chief officer of the agency, here, the commissioner of the CHP, may promulgate a pursuit policy. In *Colvin*, plaintiff contended the police chief lacked authority to promulgate a pursuit policy, arguing it had to be adopted or ratified by the city council. The court concluded the police chief, as head of the public agency, had authority to adopt the policy by issuing a directive. (11 Cal.App.4th at p. 1280.) *Brumer* espoused the same reasoning in finding the chief of police could adopt a pursuit policy. (*Brumer* v. *City of Los Angeles, supra*, at p. 987.) Here, the chief officer of the CHP did not sign the approval form to adopt the policy. Plaintiffs contend this omission is fatal to a finding of adoption.

The declaration of Glendon Craig, Commissioner of the CHP in 1982, states he participated in the review process of the proposed pursuit policy. He "read, evaluated and endorsed the approval of the proposed pursuit policy." In September 1982, he took a three-week vacation; during his absence Deputy Commissioner Gerald Clemons signed the approval form, as authorized by the CHP structure and consistent with the commissioner's endorsement of the pursuit policy. Deputy Commissioner Clemons's declaration stated he signed the form for adoption and that he would not have done so without the commissioner's approval.

Vehicle Code section 8 provides: "Whenever, by the provisions of this code, a power is granted to a public officer or a duty imposed upon such an officer, the power may be exercised or the duty performed by a deputy of the officer or by a person authorized pursuant to law by the officer." (See also Gov. Code, § 7 to the same effect.) Here, the evidence indicated that although the commissioner did not sign the approval form, he did approve the pursuit policy. The deputy commissioner did not act in the commissioner's place with respect to approving the policy, but only acted in the commissioner's absence to complete the paperwork necessary to adopt the policy. Since the commissioner had approved the policy and the deputy commissioner could sign the approval form in his absence, the trial court properly found the pursuit policy was adopted by the CHP.

### III

Plaintiffs contend the State does not have immunity because the CHP pursuit policy does not comply with subdivision (c) of section 17004.7. That subdivision provides: "If the public entity has adopted a policy for the safe conduct of vehicular pursuits by peace officers, it shall meet all of the following minimum standards: [¶] (1) It provides that, if available, there be supervisory control of the pursuit. [¶] (2) It provides procedures for designating the primary pursuit vehicle and for determining the total number of vehicles to be permitted to participate at one time in the pursuit. [¶] (3) It

provides procedures for coordinating operations with other jurisdictions. [¶] (4) It provides guidelines for determining when the interests of public safety and effective law enforcement justify a vehicular pursuit and when a vehicular pursuit should not be initiated or should be terminated."

"A determination of whether a policy adopted pursuant to subdivision (c) complies with that subdivision is a question of law for the court." (Veh. Code, § 17004.7, subd. (d).)

Plaintiffs contend the pursuit policy fails to meet the requirements of subdivision (c)(4) by failing to provide adequate guidelines for the justification, initiation, and termination of a pursuit.

■ In order to comply with section 17004.7, subdivision (c)(4), "the policy must do more than simply advise the pursuing officers to exercise their discretion and use their best judgment. . . . [¶] . . . [¶] . . . [T]he policy must control and channel the pursuing officer's discretion by providing objective standards by which to evaluate whether the pursuit should be initiated or terminated. At the very least it should instruct and direct the officers on what factors should be considered in deciding whether to pursue the fleeing suspect." (*Payne* v. *City of Perris* (1993) 12 Cal.App.4th 1738, 1746-1747 [16 Cal.Rptr.2d 143], fn. omitted.) The policy "must clearly and with specificity set forth standards to guide officers in the field." (*Colvin* v. *City of Gardena, supra*, 11 Cal.App.4th 1270, 1283.)

The guidelines, however, need not address every specific situation. "Were policies to contain specific procedures for specific situations, police could end up leafing through a manual before taking any kind of action. In many cases the situation would play itself out, without police intervention, before officers could decipher which response is called for." (*Bryant* v. *County of Los Angeles* (1994) 26 Cal.App.4th 919, 923 [32 Cal.Rptr.2d 285].) "We reject the proposition that the only way a pursuit policy can provide guidelines is by listing manifest perils." (*Brumer* v. *City of Los Angeles, supra*, 24 Cal.App.4th 983, 988.)

■ The CHP policy provides a pursuit should be initiated only to apprehend a violator who refuses to stop as required by law. (Cal. Highway Patrol Manual No. 70.6, Officer Safety Manual, ch. 4, § 4.b.(3)(b)1 (manual); further references to subdivision of section 4.b. are to this section of this manual.) A pursuit should not be undertaken if the subject can be identified so that later apprehension can be accomplished, or the dangers are too great.[2] In assessing the dangers of the pursuit, the officer should consider weather, road conditions, vehicular and pedestrian traffic, and the capabilities of both the patrol vehicle and the suspect's vehicle. (Manual,

---

[2]Plaintiffs contend this policy was not followed because Hall's passengers were apprehended during the pursuit thus enabling the officers to identify Hall so he could be appre-

§ 4.b.(1)(d).) Nor should a pursuit be initiated if the officer is transporting anyone other than a CHP employee, an authorized observer, or sworn peace officer. (*Id.*, § 4.b.(1)(f).) A pursuit should be aborted when a supervisor so directs or "when the risk of continuing outweighs the danger of permitting the subject to escape." (*Id.*, § 4.b.(3)(c).)

Plaintiffs fault the policy for failing to require an officer to consider the gravity of the suspect's offense in determining whether a pursuit is justified. In *Colvin* v. *City of Gardena, supra*, 11 Cal.App.4th 1270, 1284, the pursuit policy authorized pursuits "in *all* instances when reasonable cause exists to stop a vehicle and the driver fails to stop." (Original italics.) The court criticized this lax standard because a minor Vehicle Code violation, such as a nonfunctioning tail lamp, could be used to justify a pursuit. (*Ibid.*) In *Berman* v. *City of Daly City* (1993) 21 Cal.App.4th 276, 282 [26 Cal.Rptr.2d 493], the pursuit policy provided a pursuit should be initiated when the threat to safety was not out of proportion to the offense involved. The court found that under the policy a pursuit could be initiated based on any offense, even a minor Vehicle Code violation. The absence of specific criteria to guide the officers in making this determination left the determination to the officer's subjective judgment and thus failed to comply with subdivision (c)(4) of section 17004.7. (21 Cal.App.4th at p. 283.)

The State argues the CHP policy requires consideration of the gravity of the offense because it requires the officer to state the reason for the pursuit when he radios dispatch. (Manual, § 4.b.(4)(b)1.a.) There are also specific guidelines as to when a vehicle should be stopped for speeding. These safeguards do not address the concern of the court in *Colvin*. The pursuit policy at issue there also required officers to radio the reason for the pursuit. (*Colvin* v. *City of Gardena, supra*, 11 Cal.App.4th 1270, 1291.) Articulating the reason for the pursuit is not the same as considering whether the reason justifies the pursuit. Pursuit policies that have been upheld require an officer to consider the seriousness of the suspect's alleged offense. (See, e.g., *Colvin, supra*, at p. 1295 [San Diego policy (upheld in *Weiner* v. *City of San Diego* (1991) 229 Cal.App.3d 1203, 1211 [280 Cal.Rptr. 818]) requires officer to question continually whether the seriousness of the offense justifies continuing the pursuit]; *Brumer* v. *City of Los Angeles, supra*, 24 Cal.App.4th 983, 988 [Los Angeles policy requires officers "to continuously weigh the seriousness of the offense against the danger to innocent citizens"]; *Billester* v. *City of Corona* (1994) 26 Cal.App.4th 1107, 1121 [32 Cal.Rptr.2d 121] [factors to consider include importance of and necessity for apprehension of suspect]; *McGee* v. *City of Laguna Beach, supra*, 56 Cal.App.4th 537, 544 [factors to consider include seriousness of offense].)

hended later. We need not decide whether the policy was followed. In order to invoke immunity under section 17004.7, the State need not prove the policy was followed during the pursuit. (*Kishida* v. *State of California, supra*, 229 Cal.App.3d 329, 335-337.)

Plaintiffs' contention takes issue with the CHP's determination as to when a pursuit may be initiated. Contrary to the concern expressed by both the *Colvin* and *Berman* courts, nothing in section 17004.7 requires consideration of the seriousness of the offense before initiating a pursuit, or prohibits pursuits for minor traffic violations. (Cf. *McGee* v. *City of Laguna Beach, supra,* 56 Cal.App.4th 537, 548 [nothing in statute requires categorical rule about radios].)

While plaintiffs logically argue that a sensible pursuit policy should limit high-speed pursuits to circumstances where the suspect poses a danger to society if not apprehended immediately, they fail to recognize that this danger may arise from the suspect's actions in fleeing as well as the alleged offense that precipitated the stop. Subdivision (c)(4) of section 17004.7 requires the policy to contain "guidelines for determining when the interests of public safety and effective law enforcement justify a vehicular pursuit." Balancing the need for apprehension against the risk of the pursuit is an essential element of both public safety and effective law enforcement. The CHP policy addresses this factor by requiring an officer to abort a pursuit when the risk outweighs the danger of the suspect's escape. We decline to impose a specific guideline limiting pursuits to certain offenses or situations. The purpose of section 17004.7 was to provide immunity "while leaving to these agencies the fundamental law enforcement decisions about when to undertake a pursuit." (*Kishida* v. *State of California, supra,* 229 Cal.App.3d 329, 335.) We decline to abandon our role as judges and legislate police policy by dictating the elements of the pursuit policy. (See *McGee* v. *City of Laguna Beach, supra,* 56 Cal.App.4th 537, 548.)

Plaintiffs next assert the policy sets forth insufficient criteria for determining when to initiate a pursuit. While the CHP pursuit policy does not set forth as exhaustive a list of factors an officer should consider in initiating or continuing a pursuit as other policies approved by courts, it does provide guidelines based on weather, road conditions, traffic, vehicle capabilities, and the ability to identify and later apprehend the suspect. We find these factors sufficient to provide the guidelines required by section 17004.7, subdivision (c)(4). (*Billester* v. *City of Corona, supra,* 26 Cal.App.4th 1107, 1121; *Brumer* v. *City of Los Angeles, supra,* 24 Cal.App.4th 983, 988.)

Plaintiffs contend the absence of a radio communications factor makes the policy inadequate as a matter of law under *McGee* v. *City of Laguna Beach, supra,* 56 Cal.App.4th 537. In *McGee,* the court concluded a valid pursuit

policy must take into consideration the availability of radio contact. "The legislative requirements would be meaningless if a field officer could fly blind without taking into account a lack of outside contact or supervision and inability to obtain information and assistance." (*Id.* at p. 545.) Although the court required some consideration of radio capabilities, it refused to require that the policy prohibit pursuits without a functioning radio. (*Id.* at p. 548.) It found the policy under review adequately included communications capability as a factor in initiating, continuing, and terminating pursuits because it set forth the procedures for notifying a dispatcher and the duties of the dispatcher. (*Id.* at p. 546.) The CHP policy contains similar procedures and duties and is therefore adequate. (Manual, § 4.b.(4)(b) & (f).)

Finally, plaintiffs contend the policy directs an officer to engage in a cost/benefit analysis to determine when a pursuit should be terminated, without providing guidelines to assist the officer. In *Payne* v. *City of Perris, supra,* 12 Cal.App.4th 1738, the pursuit policy stated in broad terms that the pursuit should be terminated when in the officer's judgment continued pursuit posed a serious and unreasonable risk of harm to the officer and the public. The court found this policy inadequate because it provided no guidelines for making this determination. (*Id.* at p. 1748.) Here, by contrast, the CHP pursuit policy directs an officer to discontinue a pursuit when directed to do so by his supervisor or when the risk of continuing outweighs the danger of permitting the subject to escape. (Manual, § 4.b.(3)(c).) The policy then sets forth certain circumstances under which an officer should usually abort the pursuit. An officer should abort a pursuit in most circumstances when the circumstances present an extreme safety hazard due to congested highways, school zones or the officer's unfamiliarity with his surroundings; there is information about the suspects' identity which will allow later apprehension; the location of the pursued vehicle is no longer known; or an allied agency refuses to discontinue the pursuit after notification or its pursuit tactics are not within CHP policy. These guidelines are sufficient to comply with section 17004.7, subdivision (c)(4).

The judgment is affirmed.

Davis, Acting P. J., and Scotland, J., concurred.

A petition for a rehearing was denied April 30, 1998, and the opinion was modified to read as printed above.