Filed 11/2/21 Sun v. City of Torrance CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RONG SUN et al., | B302940 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC677211) |
| v. | |
| CITY OF TORRANCE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge. Affirmed.

Law Office of Sohaila Sagheb and Sohaila Sagheb for Plaintiffs and Appellants.

Burke, Williams & Sorensen, Mark J. Austin; Patrick Q. Sullivan, City Attorney, Tatia Y. Strader, Assistant City Attorney, and Della D. Thompson-Bell, Deputy City Attorney, for Defendant and Respondent.

———————————

Plaintiffs and appellants Rong Sun, Jason Wang, Jeffrey Wang, and Jennifer Wang (Plaintiffs) are family members of Charles Wang, who died on February 20, 2017 after his minivan was struck by a stolen car driven by Zachary Alexander (Alexander). At the time of the accident, Alexander was being pursued by two police officers of the City of Torrance (City). Plaintiffs sued the City, claiming that the officers were negligent in trying to stop Alexander without waiting for backup, and then initiating a high-speed pursuit of Alexander without due regard to public safety.

The City filed a motion for summary judgment, asserting its entitlement to immunity under section 17004.7 of the Vehicle Code,[1] which confers immunity on a public entity that has adopted a vehicular pursuit policy that satisfies the statute's requirements. The trial court granted summary judgment. We affirm.

## BACKGROUND

1. *Police Pursuit and Collision.*

At 1:40 a.m. on February 20, 2017, two City of Torrance police officers were driving back to the station to end their shift, when they observed a car with out-of-state license plates. When one of the officers looked at the driver (later identified as Alexander), he appeared nervous; his hand was shaking as he waved to the officers. The officer also observed that the driver had distinctive facial tattoos, and looked like a methamphetamine user.

---

[1] All statutory references are to the Vehicle Code.

2

At about the same time, the officers were advised by radio of a stolen vehicle in the area that matched the description of this car. The officers followed the car, which changed lanes several times, and then stopped at a gas station. The officers pulled into the gas station and got out of their car. At this point, Alexander drove away, and the officers got back in their car and pursued him. Alexander was driving well above the speed limit. Less than one minute after leaving the gas station, Alexander ran a red light and his car collided with Charles Wang's minivan, causing his death.

2. *Procedural History*

Plaintiffs sued the City alleging that the officers were negligent in attempting a felony stop without waiting for backup, prompting Alexander to flee. Plaintiffs also claimed that the officers were negligent in initiating and continuing a pursuit, late at night in a residential neighborhood, without due regard for public safety. Plaintiffs claimed the pursuit was unnecessary in that Alexander was readily identifiable and could have been located and safely stopped once backup was available; he was driving a known stolen car and had distinctive facial tattoos, and there were numerous license plate cameras operating throughout the City.

The City moved for summary judgment, asserting that it is entitled to immunity under section 17004.7, subdivision (b)(1), which provides that a "public agency employing peace officers that adopts and promulgates a written policy on, and provides regular and periodic training on an annual basis for, vehicular pursuits complying with subdivisions (c) and (d) is immune from liability for civil damages for personal injury to or death of any

person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being . . . pursued in a motor vehicle by a peace officer employed by the public entity."

Plaintiffs opposed the motion for summary judgment on the grounds that the City was not entitled to immunity because its policy did not meet the standards set forth in section 17004.7, in particular the standard regarding initiating a pursuit. After briefing and argument, the trial court granted the summary judgment motion,[2] concluding that the City's policy complies with section 17004.7 and the City is thus entitled to immunity.

On December 10, 2019, Plaintiffs filed a premature but timely notice of appeal from the judgment entered on January 3, 2020. (Cal. Rules of Court, rule 8.104(d).)

## DISCUSSION

1.    *Standard of Review*

We apply a de novo standard of review to the question whether the trial court properly granted summary judgment to the City, viewing all the evidence in the light most favorable to Plaintiffs and resolving all disputed issues of fact in their favor. (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.) Whether the City's vehicular pursuit policy was sufficient to confer immunity pursuant to section 17004.7 is a pure question of law subject to independent review. (§ 17004.7, subd. (f); *Colvin v. City of Gardena* (1992) 11 Cal.App.4th 1270, 1281.) If the policy

---

[2] The trial court's initial tentative ruling was to deny summary judgment, but after oral argument the court changed its tentative and granted the motion.

4

complies with section 17004.7, the City is entitled to immunity regardless of whether the officers actually complied with the policy in this case, and regardless of whether they were negligent in implementing the policy. (See *Brumer v. City of Los Angeles* (1994) 24 Cal.App.4th 983, 987 ["if the agency adopts a pursuit policy which meets the statutory requirements, then immunity results. The extent to which the policy was . . . followed in the particular pursuit is irrelevant"].)

2.      *Section 17004.7 Immunity*

The overall purpose of section 17004.7, in giving public entities immunity from tort liability if they adopt vehicular pursuit policies that meet certain standards, is to "improve public safety by encouraging public entities to promulgate a pursuit policy and provide training pursuant to that policy, which, in turn, was designed to reduce the number of pursuits and the number and severity of collisions resulting from pursuits." (*Ramirez v. City of Gardena* (2018) 5 Cal.5th 995, 1001.) Subdivision (c) of section 17004.7 enumerates "minimum standards" that must be met in pursuit policies, to provide guidance to officers on various aspects of the decisions they must make in considering whether to initiate or continue a pursuit, and how the pursuit should be conducted. The statute does not, however, dictate the specific content of local entities' policies; instead, it leaves to public agencies the fundamental law enforcement decisions as to what specific instructions to provide to their officers on each standard. (*McGee v. City of Laguna Beach* (1997) 56 Cal.App.4th 537, 548.)

Subdivision (c)(1) of section 17004.7 provides that a policy "for the safe conduct of motor vehicle pursuits by police officers

5

shall . . . . [¶] . . . [d]etermine under what circumstances to initiate a pursuit.  The policy shall . . . articulate the reasons for which a pursuit is authorized, and identify the issues that should be considered in reaching the decision to pursue.  It should also address the importance of protecting the public and balancing the known or reasonably suspected offense, and the apparent need for immediate capture against the risks to peace officers, innocent motorists, and others to protect the public."  The subsequent subparts list other issues pursuit policies must address, including the number of law enforcement vehicles authorized to participate, communication procedures, supervision, driving tactics and authorized pursuit intervention tactics, factors to be considered in determining speeds during pursuit, and the role of air support.  (§ 17004.7, subd. (c)(2)–(9).)

Subdivision (c)(9) of section 17004.7 is headed, "Determine when to terminate or discontinue a pursuit."  It lists specific factors to be considered when making this decision, including ongoing evaluation of risk to the public and officers, weighing the nature of the offense and apparent need for immediate capture against the risks to the public and officers, vehicular and pedestrian traffic, weather, speeds, availability of air support, and procedures to be followed when an offender is identified and may be apprehended later or when the location of the pursued vehicle is no longer known.  (§ 17004.7, subd. (c)(9)(A)–(H).)

The statute also specifies that it is intended to set "minimum policy standards" and does not preclude a local entity from adopting a policy that "limits or restricts pursuits." (§ 17004.7, subd. (e).)

3.    *The City's Pursuit Policy*

The City's pursuit policy is set forth in Torrance Police Department General Order 3.10 Pursuit (issued April 4, 2007).  It begins with sections entitled "PURSUIT POLICY," "PROCEDURE," and "COMMUNICATIONS."  Within the "PURSUIT POLICY" section is a subsection headed "ADMINISTRATIVE PHILOSOPY" stating that the purpose of the policy is to "assist officers in securing a balance between the protection of the lives and safety of the public and police officers, and a duty to enforce the law and apprehend violators," and to provide "specific guidelines to direct law enforcement activities in this very critical area of police practice," while recognizing that it is impossible for any policy "to anticipate all possible circumstances."  The next subsection, entitled "POLICY," states that vehicular pursuits shall be conducted "in such a manner as to optimize the level of safety to the public, police personnel, and to minimize potential damage to property.  The apprehension of a fleeing violator shall not be more important than the safety of the pursuing officers or citizens.  When engaged in a pursuit, officers and supervisors must continually evaluate whether the seriousness of the offense justifies continuing the pursuit[ ] [and] . . . shall weigh the seriousness of the violator's known, or suspected, crimes against the potential for death or injury if the pursuit is continued."

The next section, entitled "PROCEDURE," includes provisions designed to minimize the necessity for vehicular pursuits in the first place.  It states that "[t]o discourage violators or suspects[ ] from attempting to avoid arrest by fleeing, officers should be in close proximity to the violator's vehicle, whenever possible, before activating red lights and attempting to stop the

7

suspect vehicle" and that officers, "when possible, should request and wait for assisting units to get into position before initiating a vehicle stop that may result in a pursuit." This section also specifies the role of the "primary unit" and "senior officer" in a pursuit; places limits on the number of pursuing vehicles; specifies that unmarked units shall not initiate pursuits; and provides that helicopter support should be requested when available.

The third section, entitled "COMMUNICATIONS," specifies the communication duties of the primary unit, and requires designation of a supervisor to "monitor, evaluate[,] and terminate, if necessary, the pursuit."

The fourth section of the City's policy, entitled "DETERMINING FACTORS," contains the language on initiation of pursuit that is the main focus of this appeal. It begins by stating that "[w]hen balancing the interests of public safety with effective law enforcement, each officer and supervisor involved in a vehicle pursuit should carefully and continuously consider the following factors in determining when to initiate, continue, or terminate a pursuit." The subsection on "[i]nitiating the pursuit" provides that an officer "may initiate a pursuit under the following conditions: [¶] a. When a known wanted felon is in the vehicle[;] [¶] b. When an actual or suspected violator of the law operates the vehicle being pursued[;] [¶] c. When the seriousness of the violation involved is such that failure to initiate a pursuit would constitute a continuing danger to public safety."[3]

---

[3] The policy does not specify whether only one or all three of these factors must be present to initiate a pursuit, but the City appears to concede they are disjunctive.

8

The next subsection provides a list of factors that officers should consider when "determining whether or not to continue or terminate a pursuit," including the speeds involved and the degree to which traffic laws must be disregarded; road conditions, weather and visibility; type of neighborhood (residential, industrial, etc.); traffic flow and conditions; time of day, familiarity of the officer with the area; quality of radio communications; whether the violator is identifiable and can be apprehended later; distance between the pursuing and fleeing vehicles; and performance capability of the police vehicle compared to the fleeing vehicle.

Plaintiffs argue that the City's policy fails to adequately " 'control and channel' " police officers' discretion as to when to initiate a pursuit. (*Ketchum v. State of California* (1998) 62 Cal.App.4th 957, 967.) This is a critical decision in terms of public safety, since, according to the City's own training materials, most police-pursuit-related accidents occur within two minutes of initiation of a pursuit. Plaintiffs point out that, although the City's policy lists a number of factors to be considered in *continuing* a police pursuit, it allows officers to *initiate* a pursuit in any situation in which "a known wanted felon is in the vehicle," or "an actual or suspected violator of the law operates the vehicle." Since, for example, driving a car with a broken tail light is an "actual or suspected violat[ion] of the law," the policy allows police officers to initiate a pursuit even for minor traffic-code violations. Plaintiffs argue that the potentially tragic consequences of police pursuits to innocent bystanders far outweigh the importance of apprehending a person who—perhaps due to fear, or trying to avoid a fine he or she cannot pay—flees to avoid being cited for a minor traffic violation.

9

The City responds that the language of its policy section on "[i]nitiating the pursuit" must not be read in isolation, but in the context of the three preceding sections that lay out general policies and procedures applicable to all phases of a pursuit, and in the context of the subsequent sections listing factors that officers must consider in deciding whether to continue or terminate a pursuit once they have initiated it.

We agree with the City's position. Given their placement at the beginning of the policy and their broad scope, the first three sections, headed "PURSUIT POLICY," "PROCEDURE," and "COMMUNICATIONS," are clearly intended to apply to all phases of a pursuit, including the decision whether to initiate a pursuit. The City is correct that the policy's language on initiation of pursuit should be read in the context of these more general provisions.

Plaintiffs also contend that the City's policy fails to meet the requirements of section 17004.7, subdivision (c) because it allows officers to initiate a pursuit whenever a known wanted felon is in the vehicle, or a known or suspected violator of any law is driving, without considering the specific safety factors listed in the subsection on continuing and terminating pursuits.

We reject this argument for the same reason; we do not read the "[i]nitiating the pursuit" section of the City's policy in isolation. The City's policy does separate out factors to be considered in deciding whether to initiate a pursuit, from additional factors officers must consider in deciding to continue or terminate a pursuit. But the officers' discretion is still adequately controlled and channeled by the broad, introductory sections of the City's policy, as well as by the "[i]nitiating the pursuit" section itself.

4. *Case Law on Section 17004.7 Immunity.*

Plaintiffs point out that many pursuit policies that have been found to comply with section 17004.7 by the Courts of Appeal have more specific guidance as to when officers should—or should not—initiate a pursuit, than the City's policy does. For example, the policy at issue in *Ramirez v. City of Gardena* (2017) 14 Cal.App.5th 811, 827 instructs officers to consider the type of violation, whether the officers have an accurate vehicle description and plate number (so the violator could be apprehended later), and pursuit speeds, traffic conditions, and presence of pedestrians, in deciding whether to initiate a pursuit. The pursuit policy found sufficient in *Ketchum v. State of California, supra,* 62 Cal.App.4th at page 969, instructs officers not to initiate a pursuit if the subject can be identified and apprehended later, not to initiate a pursuit if they have a civilian passenger, and also to consider a list of factors including weather, road conditions, traffic, and vehicle capabilities. The pursuit policy found sufficient in *Alcala v. City of Corcoran* (2007) 147 Cal.App.4th 666, 676 further controlled police discretion by prohibiting officers from initiating a pursuit to enforce minor traffic violations, and from treating a minor offense as a more serious offense based on hunch or speculation.

In *Brumer v. City of Los Angeles, supra,* 24 Cal.App.4th 983, at pages 987 to 988, on the other hand, our colleagues in Division Four found a pursuit policy sufficient to comply with section 17004.7 even though it did not include a list of risk factors such as traffic, weather, visibility, and road conditions that officers must consider in deciding whether to begin or terminate a pursuit, but did "require officers to drive with due regard for the safety of others, to continuously weigh the seriousness of the

11

offense against the danger to innocent citizens, and to continuously question whether pursuit is warranted or should be abandoned." (See *McGee v. City of Laguna Beach, supra*, 56 Cal.App.4th at p. 547 [there are "no magic words that validate or discredit a pursuit policy for purpose of the immunity"; policy complied with section 17004.7 "based upon the totality of the . . . policy, including its communication component, *and* its repeated emphasis on public and officer safety in balancing the risks of a pursuit against the need to immediately capture an offender"].)

The cases Plaintiffs rely on in which pursuit policies were found noncompliant with section 17004.7, in contrast, involved policies far less detailed and specific than the City's. In *Colvin v. City of Gardena, supra*, 11 Cal.App.4th 1270, at page 1284, we considered a policy that, like the City's, allowed officers to initiate a pursuit even for a minor traffic violation such as a nonfunctioning tail lamp. The Gardena policy's guidance on initiating, continuing and terminating pursuits consisted only of one paragraph, stating, " 'Pursuits may be initiated when an officer has reasonable cause to stop a vehicle and the driver fails to stop as required by law. [¶] . . . Discontinuance of pursuits: Justification to continue a pursuit will be based on what reasonably appears to be the facts known or perceived by the officer. Officers should consider discontinuing a pursuit when it poses a serious and unreasonable risk of harm to the pursuing officer or to the public balanced against the seriousness of the violations, or when directed to do so by a supervisor.' " (*Id.* at p. 1283.) We found this to be a "calculated disinclination to set forth any 'minimum standards,' " in an effort to "clothe [Gardena's] officers with maximum discretion and flexibility."

(*Id.* at p. 1285; see *Payne v. City of Perris* (1993) 12 Cal.App.4th 1738, 1745–1746 [pursuit policy "substantially identical" to Gardena's fails to comply with section 17004.7]; *Berman v. City of Daly City* (1993) 21 Cal.App.4th 276, 283–285 [pursuit policy similar to Gardena's except that it provided more guidance on terminating pursuits, still failed to comply with section 17004.7].)

*Colvin* contrasted Gardena's policy with the policies of other cities such as San Diego, pointing out that San Diego's policy limited the range of situations in which an officer could initiate a pursuit. (*Colvin v. City of Gardena*, *supra*, 11 Cal.App.4th at p. 1284 [San Diego policy allows initiation of pursuit "when, inter alia, a known wanted felon is in the vehicle or the occupants of the vehicle have committed a crime in the officer's presence"].) In doing so, *Colvin* did not hold that a pursuit policy *must* limit the range of offenses for which a pursuit may be initiated, to comply with section 17004.7. *Colvin* took judicial notice of other cities' pursuit policies "simply to ascertain some of the factors which have been considered relevant by public entities in drafting a police pursuit policy in compliance with the statute." (*Colvin*, at pp. 1282–1283.)

5.   *The City's Pursuit Policy is Sufficient to Confer Section 17004.7 Immunity.*

The section of the City's policy on initiating pursuit addresses each specific requirement stated in subdivision (c)(1) of section 17004.7. It includes a definition of "pursuit" in section 3.10.1.A; it "articulate[s] the reasons for which a pursuit is authorized" in section 3.10.4.A1a to c; it "identif[ies] the issues that should be considered in reaching the decision to pursue" and addresses "the importance of protecting the public and balancing

the . . . offense, and the apparent need for immediate capture against the risks to [police] officers, innocent motorists, and others" in sections 3.10.1.B and C and 3.10.4.A.  (§ 17004.7, subd. (c)(1).)  And, as soon as officers initiate a pursuit, they are required to evaluate whether to continue or abandon the pursuit, based on the specific safety factors enumerated in subsection 3.10.4.A2.

The City's policy does not explicitly require its officers to consider, in deciding whether to *initiate* a pursuit, the same enumerated safety factors they must consider in deciding whether to *continue* a pursuit (traffic, weather, and road conditions, whether the suspect is identifiable and could be apprehended later, etc.).  But listing these factors under the heading, "Continuing and terminating the pursuit" rather than the heading, "Initiating the pursuit," does not mean the policy fails to comply with section 17004.7.  The statute itself lists most of these safety factors under the heading, "Determine when to terminate or discontinue a pursuit" (§ 17004.7, subd. (c)(9)) rather than under the heading, "Determine under what circumstances to initiate a pursuit" (§ 17004.7, subd. (c)(1)).

Although a public entity may choose to require its officers to consider some or all of these factors before initiating a pursuit, the City's approach also makes sense.  Some of these factors would often be unknown at the time the pursuit is initiated, since they would depend on how fast, in what direction the suspect flees, and could change rapidly as the pursuit situation develops.  As the City's policy states in its preamble headed "POLICY," officers and their supervisors must "continually evaluate whether the seriousness of the offense justifies continuing the pursuit."

14

Plaintiffs rely heavily on the fact that the City's policy allows officers to initiate a pursuit even for a minor traffic violation. The Third District Court of Appeal, in *Ketchum v. State of California*, *supra*, 62 Cal.App.4th at pages 967 to 969, considered the same argument, that pursuit policies do not adequately " 'control and channel' " police discretion if they allow officers to initiate a pursuit even for minor traffic violations such as a nonfunctioning tail lamp. The *Ketchum* court "decline[d] to impose a specific guideline limiting pursuits to certain offenses or situations" because the "danger to society . . . may arise from the suspect's actions in fleeing as well as the alleged offense that precipitated the stop," and the purpose of 17004.7 was to provide immunity " 'while leaving to these agencies the fundamental law enforcement decisions about when to undertake a pursuit.' " (*Id.* at p. 969.)

The City's policy—like those at issue in *Colvin, Payne,* and *Berman*—does allow officers to initiate a pursuit in a broad range of circumstances. But the City's policy, taken as a whole, sufficiently controls and channels officer discretion to initiate pursuits, in light of its "POLICY" and "ADMINISTRATIVE PHILOSOPHY" sections emphasizing the importance of public safety over the apprehension of violators; its requirement for continual evaluation whether the seriousness of the offense justifies continuing the pursuit; its limitations on the number or type of police vehicles that may get involved in a pursuit; its provisions for supervisory control and maintenance of radio communications; and its list of safety factors that must be considered in continuously evaluating whether a pursuit has become too dangerous and should be terminated.

We express no opinion as to whether the City's current policy strikes the right balance between public safety and law enforcement. (See *Ramirez v. City of Gardena*, *supra*, 14 Cal.App.5th at p. 825 ["judicial obligation 'to interpret police policies for purposes of—section 17004.7 does not give us the supervisory power to dictate good (or bad) law enforcement tactics' "].)  The City could choose to amend its pursuit policy to limit the circumstances in which officers may initiate a pursuit, in light of the tragic death of Charles Wang and the risk that innocent persons might be killed within minutes when officers initiate an unnecessary or overly dangerous pursuit.  This policy question is not within the authority of this court.

Since the trial court correctly found that the City promulgated a pursuit policy that complies with section 17004.7, the City is entitled to immunity.  The trial court was correct in granting the motion for summary judgment.[4]

---

[4] Because the City was entitled to summary judgment pursuit to section 17004.7, it is unnecessary to reach any of the other issues raised on appeal, such as whether sections 17004 or 21055 would also provide immunity to the City; whether there were triable issues of fact as to the officers' negligence; or whether the trial court erred in excluding Plaintiffs' expert's declaration from evidence.

16

## DISPOSITION

The judgment is affirmed.  In the interests of justice, the parties shall bear their respective costs on appeal.

NOT TO BE PUBLISHED.


MATTHEWS, J.[*]

We concur:


EDMON, P. J.


LAVIN, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.